John Weston, as Surviving Partner, Respondent, *v.* The City of Syracuse, Appellant.

1. Municipal Corporations — Power of Common Council to Waive Compliance with Sewer Contract. Where, by the charter of a city, all details in the construction of sewers are left to the common council, and not made the basis of the consent of the property owners, it is within the power of the common council to waive performance of a sewer contract so far as the work done is not in conformity with the plans and specifications, and to modify the contract to the extent of conforming with the work already done.

2. City Engineer's Certificate of Compliance with Contract. The requirement that the contractor for a city sewer shall obtain from the city engineer a certificate of compliance with the contract in order to be entitled to payment, is satisfied by a certificate that the work done prior

to a resolution of the common council modifying the contract as to that work, complied with such modification, and that the rest of the work complied with the original contract.

3. CONTRACTOR'S REMEDY FOR NON-PAYMENT ON MUNICIPAL CONTRACT. Where a municipal contract for a local improvement provides for payment only through a special assessment, the contractor should proceed by mandamus where the municipality has merely failed to proceed with diligence to collect the assessment; but where the municipality disables itself from performing the contract by such action on its part as makes void, and, therefore, uncollectible an assessment for the purpose of providing compensation, or refuses to perform the contract on its part, then the remedy is by action against the city for breach of the contract.

4. CONTRACTOR'S REMEDY FOR NON-PAYMENT BY ACTION FOR BREACH OF CONTRACT. When a contract for a city sewer provides that no payment shall be made until the cost has been collected by a special assessment, the contractor, having fully performed the contract as originally executed or as lawfully modified, can maintain an action against the city for breach of the contract on its part where the city has refused to recognize the contractor's performance, has abandoned the contract, has refused to make the assessment called for by the contract, and has proceeded to contract with another for reconstruction.

5. MODIFICATION OF SEWER CONTRACT BY COMMON COUNCIL AN ADMINISTRATIVE ACT, SUBJECT TO JUDICIAL INVESTIGATION. The adoption, by the common council of a city, of a resolution modifying a contract for the construction of a sewer, is not a legislative act, but is merely administrative, and may be the subject of judicial investigation.

6. RESOLUTION OF COMMON COUNCIL VITIATED BY FRAUD AND CORRUPTION. A resolution of a common council modifying a sewer contract, if passed by means of fraud and corruption, can be declared of no effect by the courts; and its invalidity is available as a defense to the city when sued by the contractor upon the contract.

7. DEFENSE OF MUNICIPALITY AGAINST CONTRACTOR. Whatever a taxpayer can accomplish for the protection of the municipality by a suit under the Taxpayers' Act, the officers of the municipal corporation, whose duty it is to protect the corporate property from waste and injury, may bring about by a defense to an action brought by a contractor for a local improvement.

*Weston* v. *City of Syracuse*, 82 Hun, 67, reversed.

(Argued January 13, 1899; decided February 28, 1899.)

APPEAL from a judgment of the late General Term of the Supreme Court in the fourth judicial department, entered January 12, 1895, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The plaintiff, the survivor of his deceased partner, Charles Utting, brought this action to recover a balance that he alleged was due upon a contract entered into between the firm of Weston & Utting and the city of Syracuse for the construction of what is generally known as the Kennedy street sewer. The contract was executed in November, 1889, and shortly thereafter Weston & Utting commenced the construction of the sewer, and during the few months following the work so far progressed that 1,453 feet of the sewer was constructed. Then a change in the city government took place, which resulted in a change of city engineers, and the new engineer, after some investigation, reported to the common council that the sewer was not being constructed in accordance with the contract. Thereupon the common council availed itself of the clause in the contract providing for such a contingency and suspended the work upon the claim that the contractors were not performing the work as per agreement. The common council then by an appropriate committee, assisted by the engineer, commenced an investigation of the sewer so far as completed and of the manner of its construction. The sewer was visited by this committee, and some of its members, in company with the deputy city engineer, passed through the sewer and thereafter reported the result of their investigation to the common council.

On the 29th day of July, 1890, the common council, having received the report, passed the following resolution:

" *Resolved*, that the contractors, Weston & Utting, having the contract for building the Kennedy street sewer, be required to complete the part of the sewer already built in accordance with the terms of the contract, except that the contractors need not be required to change the grade of the work as it now exists, and that the invert portion shall remain as now laid. And the contract for said work is hereby amended and modified to that extent, the remaining portion of said sewer to be constructed in accordance with the terms of said contract without modification."

After the passage of the resolution and before its approval

by the mayor the contractors entered into another contract by which they agreed, in addition to fulfilling the obligations imposed upon them by the resolution, to correct, if required, all sags that might exist in the bottom of the sewer. Pursuant to that resolution the contractors went on and completed the balance of the sewer in accordance with the terms of the contract, as is conceded on all sides. In the meantime resolutions were passed by the common council extending the time for the completion of the work under the contract, no objection thereto being offered by any of the members of the common council.

October 20th, 1890, a partial estimate was submitted to the common council by the city engineer for work done on the sewer, amounting to $3,141.50, and the common council, by a unanimous vote of all the members responding to the call of the roll, directed that a warrant be drawn for such amount. This was done, the mayor's signature attached and the warrant paid. From time to time thereafter down to January 5th, 1892, other partial estimates for work done on the sewer were submitted to the common council, aggregating over $13,000.00, and such amounts were always paid by like direction of the common council.

July 25th, 1892, the commissioner of public works, through the city engineer, made and submitted to the common council a final estimate and account of the work done by the contractors, covering the whole distance of the sewer and including extra work to the amount of $803.19, incurred in connecting the sewer with Oakwood cemetery, which, after crediting payments already made, showed a balance due to the contractors of $9,433.41. The estimate was headed: "Final account. City Engineer to John Weston and Charles Utting, Dr." Among other things, it contained the following certificate: "I hereby certify that for the distance of 1,453 feet from Onondaga Creek the work was done in accordance with the resolution adopted by the common council the 29th of July, 1890. The next 1,000 feet were done in accordance with the contract and specifications, except in the matter of grade. At

the beginning of the north end the sewer is about two feet above the grade established by the original map, and at the end of 1,000 feet it is at said grade. The remaining portion of the sewer was completed in accordance with the contract and specifications."

Subsequently, the common council passed a resolution directing that payment be made in accordance with the estimate, but the resolution was vetoed by the mayor, and thereafter, and on December 12th, 1892, the common council passed a resolution affecting the 1,453 feet of the sewer first constructed, in which resolution it was recited that notice had been given to the contractors to take the necessary steps within three days to put their work in a condition to fulfill the terms of their contract, but that, notwithstanding such notice, the contractors did not, within the said three days, nor at all, take such measures as in the opinion of the city engineer were necessary to insure the satisfactory completion of said work, and it was "*Resolved*, That said contract be and the same is hereby declared abandoned by said contractors, said Weston & Utting, and further *Resolved*, that the Commissioner of Public Works forthwith notify such contractors to discontinue all work under said contract."

The city authorities having refused to accept the contract as completed, but, on the contrary, having formally declared it not completed and the contract abandoned by the contractors, and having refused to take any steps whatever under it to make an assessment upon the property benefited, in order to raise the money with which to pay the expenses of constructing the sewer as provided by the contract, the plaintiff brought this action. He claims that, notwithstanding it was provided in the contract that no payment should be made until the cost was assessed upon and collected from the assessable taxpayers liable for local taxation for the construction of sewers, that the defendants have been guilty of a breach of contract, and, therefore, he is entitled to recover the damages caused to him by their failure to make performance.

Upon the trial it was insisted by the defendant, and testi-

mony was offered tending to prove, that the contractors failed to comply with the contract in other respects than those mentioned in the resolution of July 29th; and it is made to appear that after the passage of the resolutions declaring that the contractors, Weston & Utting, had abandoned the contract the authorities had caused a portion of the sewer to be rebuilt. Evidence tending to show faulty construction was given.

On the other hand, testimony was presented tending to support the contention of the plaintiff, that all the variations from the contract were made with the knowledge of the city engineer in charge of the work and done with his approval and by his direction; and it was insisted that such approval and direction were founded upon actual necessity in some respects and good judgment in others.

The court decided that as to the variations in the construction of the sewer referred to in the resolution of July 29th the common council had waived strict performance and modified the contract to that extent, and that they had also waived such defects as had come to the knowledge of the common council before passing this resolution, although the defects were not mentioned therein, and he submitted to the jury the question whether in all other respects there was a substantial performance of the contract by the contractors, and the verdict in favor of the plaintiff constituted an affirmative answer to that question.

The judgment entered thereon was affirmed at the General Term. Other facts appear in the opinion.

*Charles E. Ide* for appellant. The attempted modification of the contract by the common counsel was unauthorized, and their act in that regard *ultra vires;* and furnished no excuse for the non-performance of the contract according to the plans and specifications. (L. 1885, ch. 26, §§ 139, 155, 156; L. 1888, ch. 449; L. 1889, ch. 475; *Bond* v. *Mayor, etc.,* 19 N. J. Eq. 376; *Dillon* v. *City of Syracuse,* 29 N. Y. S. R. 912; *People* v. *Bd. of Imp.,* 43 N. Y. 227; *Dickinson* v. *Poughkeepsie,* 75 N. Y. 65; *Shaw* v. *Trenton,* 49 N. J. L. 339; *Nash* v. *St.*

*Paul,* 11 Minn. 174.)   The failure to obtain the requisite certificate of the engineer was fatal to a recovery.   (*People ex rel.* v. *Mayor, etc.,* 65 Hun, 321; 144 N. Y. 63; *Dillon* v. *City of Syracuse,* 29 N. Y. S. R. 912; *Tone* v. *Mayor, etc.,* 70 N. Y. 157.)   The action was prematurely brought in that the amount of the contract price had not been assessed and collected.   (*Hunt* v. *City of Utica,* 18 N. Y. 442; *People ex rel.* v. *Mayor, etc.,* 65 Hun, 321; 144 N. Y. 63; 1 Dillon on Mun. Corp. [4th ed.] § 483; *Town of Tipton* v. *Jones,* 77 Ind. 307; *People ex rel.* v. *Bd. of Police,* 107 N. Y. 239.) The exclusion of the evidence offered by defendant to show that the passage of the resolution of July twenty-ninth was procured by bribery and fraud was error and the exceptions to such exclusion were well taken.   (1 Dillon on Mun. Corp. [4th ed.] §§ 311, 312.)

*George H. Sears* for respondent.   The court properly denied the defendant's motion, made at the close of plaintiff's evidence, and at the close of the case, for a nonsuit for the reason stated, "That the plaintiff cannot recover in this case at this time upon the ground that it has not been shown that the contract price of the sewer had been assessed and collected from the property owners along the line of the improvement." (*Reilly* v. *City of Albany,* 112 N. Y. 30; *Lyon* v. *District of Columbia,* 20 D. C. 484; *Smith* v. *City of Buffalo,* 44 Hun, 156; *C. Nat. Bank* v. *City of Portland,* 33 Pac. Rep. 532; *Cumming* v. *Mayor, etc.,* 11 Paige, 596; *Sage* v. *City of Brooklyn,* 89 N. Y. 189; *McCormack* v. *City of Brooklyn,* 108 N. Y. 49; *People ex rel.* v. *Chapin,* 103 N. Y. 635; *People ex rel.* v. *Fairman,* 91 N. Y. 385; *People ex rel.* v. *Barnes,* 114 N. Y. 317.)   The contention of counsel that the defendant's common council had no power or authority to pass the resolution of July twenty-ninth modifying the contract, and the objections that were subsequently interposed in the case on this ground are not well founded in fact or law.   (*Schreyer* v. *Mayor, etc.,* 7 J. & S. 1; *McKyring* v. *Bull,* 16 N. Y. 297; *Paige* v. *Willet,* 38 N. Y. 28; *Good*

*win* v. *M. M. Ins. Co.*, 73 N. Y. 496; 13 Abb. [N. C.] 388; *Valton* v. *N. F. L. Assur. Co.*, 20 N. Y. 35; Pom. on Rem. § 708; L. 1885, ch. 26, §§ 30, 138, 148; *Moore* v. *City of Albany*, 98 N. Y. 405; *Meech* v. *City of Buffalo*, 29 N. Y. 198; *Voght* v. *City of Buffalo*, 133 N. Y. 463; *Fitzgerald* v. *Walker*, 55 Ark. 148; *Kingsley* v. *City of Brooklyn*, 78 N. Y. 200.) Defendant is estopped from setting up the defense of non-performance. (*Dillon* v. *City of Syracuse*, 29 N. Y. S. R. 612; *Brady* v. *Mayor, etc.*, 44 N. Y. S. R. 623; *D. & H. C. Co.* v. *P. C. Co.*, 50 N. Y. 264; *Mulholland* v. *Mayor, etc.*, 113 N. Y. 631; *Kingsley* v. *City of Brooklyn*, 78 N. Y. 200; *Riley* v. *City of Brooklyn*, 46 N. Y. 446; *Cartwright* v. *Village of Mt. Vernon*, 21 N. Y. S. R. 611.) There can be no force in the objection that the resolution of July 29, 1890, was procured by bribery, and the offers of the defendant to give evidence of bribery were properly denied. (*Devlin* v. *Mayor, etc.*, 4 Misc. Rep. 106; Dillon on Mun. Corp. § 313; *Jonas* v. *Loving*, 55 Miss. 109; *Pain* v. *Boston*, 124 Mass. 486; *Freeport* v. *Marks*, 59 Penn. St. 257; *Baker* v. *State*, 27 Ind. 485.)

PARKER, Ch. J.   On this review it must be taken as established by the verdict of the jury that the plaintiffs substantially performed their contract with the defendant, except as to the construction of the first 1,453 feet of the sewer, the work upon which was done prior to the investigation by the common council.   That investigation resulted in a resolution waiving performance so far as the work done was not in conformity with the plans and specifications, and modifying the contract to the extent that it should be in conformity with the work already done.   The trial court decided that the resolution of July 29, 1890, effected that result.   The appellant concedes that such was the purpose of the common council, but nevertheless insists that it was beyond the power of that body to waive performance of any of the requirements of the contract or specifications, and that in holding otherwise error was committed.

36

The result of our examination of the charter of the city of Syracuse leads us to the conclusion that it does not place any limitations upon the powers of the common council in respect to such acts as the common council undertook to perform by means of the resolution in question. Aside from certain limitations that we need not specify, all details are left to the common council, and not made the basis of the consent of the property owners. The modification attempted, therefore, was within the power of the common council under the ruling of this court in *Meech* v. *City of Buffalo* (29 N. Y. 198); *Moore* v. *City of Albany* (98 N. Y. 396); and *Voght* v. *City of Buffalo* (133 N. Y. 463).

The appellant next contends that the failure to obtain the certificate of the engineer entitled the defendant to a dismissal of the complaint. We think the certificate obtained was in compliance with the contract as modified by the resolution of July 29, 1890. The engineer could not certify that the work was performed in accordance with the original contract and specifications, because such was not the fact, but he did certify in effect that the work done after the 29th day of July, 1890, was in accordance with the contract and specifications, while the work done prior to that date was in conformity with the resolution adopted by the common council, by which an attempt was made to modify the contract. It was, in effect, therefore, a certificate that the work had been performed in accordance with the original contract as modified by the resolution of July 29, 1890, and was sufficient.

The appellant also insists that the action was prematurely brought, because no part of the contract price has been assessed or collected. The contract provides : "No payment shall be made to the party of the first part under this contract, until the cost of such work shall have been ascertained and assessed upon and collected from the taxpayers liable to local taxation for the same  *  *  *  and as soon thereafter as the costs of said work shall have been collected from said taxpayers, the party of the first part shall be entitled to receive the amount due on said final account.  *  *  *  "  This clause

in the contract is not an unusual one, nor is it, or at least an equivalent provision, a stranger to the courts. As long ago as the action of *Hunt* v. *City of Utica* (18 N. Y. 442) the court had under consideration a contract of this character. After its completion, and on the 16th day of November, the claim for compensation was allowed by the common council, "payable when collected by assessment." On the 7th of December following the common council made the necessary assessment and directed that measures be taken for the collection thereof. On January 26th the assignee of the contractor commenced an action to recover the contract price. At that time no part of the assessment had been paid, but five days later the treasurer issued a warrant for its collection, which was in the hands of the collector at the time of the commencement of the action. It was held that the plaintiff could not recover. The decision of the court in that case has not been questioned in any subsequent case, and the decision of many succeeding cases has been governed by the principle enunciated in that case, viz., that where a way of payment is prescribed by statute or by contract that way must be strictly pursued. (*People ex rel. Ready* v. *Mayor, etc., of Syracuse*, 144 N. Y. 63; *Swift* v. *Mayor etc.*, 83 N. Y. 528, 533; *Howell* v. *City of Buffalo*, 15 N. Y. 512, 519; *Baldwin* v. *City of Oswego*, 1 Abb. Ct. App. Dec. 62, 68; *Beard* v. *City of Brooklyn*, 31 Barb. 142, 149; *Dannat* v. *Mayor, etc.*, 66 N. Y. 585.)

Such a provision as to work of this character is usual and reasonable, for, as the municipal authorities have no right to make such improvements at the expense of the taxpayers generally, it follows, *first*, that no money is raised by general taxation that is available for the payment of such expenses; and, *second*, that it is necessary to make the avails of the special assessment meet the obligations of the city under the contract. All this is known to the contractor when he makes his bid and enters into the contract, and presumably he has provided suitable compensation to himself for the loss of the use of the sums due under his contract until a reasonable time shall have

elapsed in which to levy the assessment and make collection. If he finds, as in the case of *Ready* v. *Mayor, etc. (supra)*, that the city has not proceeded with reasonable diligence to collect the assessment and turn over the proceeds to him, he may and should proceed by mandamus to compel such action on its part. But where a municipality disables itself from performing the contract by such action on its part as makes void and, therefore, uncollectible an assessment, for the purpose of providing compensation, or refuses to perform the contract on its part, as in *Reilly* v. *City of Albany* (112 N. Y. 30), then an action against the city for the damages sustained by reason of its failure to perform the contract on its part may be maintained.

It has been suggested that the two cases last referred to are in conflict, but they are not. The *Ready* case points out that prior to the breach of the contract by the municipality the contractor's remedy is to apply for a mandamus to hasten municipal action in the absence of due diligence; while the *Reilly* case, with equal clearness, marks out the path to be pursued by the contractor, where the other party, to wit, the municipality, either designedly or accidentally puts itself in a position where it will not or cannot perform the contract on its part. In such a case the remedy is against the city for breach of the contract.

As we must regard the facts as found by the verdict of the jury, this case comes under the rule in *Reilly's* case, for the plaintiffs have fully performed the contract as modified by the resolution of July 29, 1890, and are entitled to compensation therefor. But the defendant, instead of recognizing the plaintiffs' rights in the premises and proceeding with reasonable diligence to levy the assessment, collect and turn it over to the plaintiffs, has declared by resolution that the contractors have not only not performed, but have abandoned the contract, has let to other contractors the rebuilding of a portion of the sewer constructed by these plaintiffs, and has refused to take any steps looking to the making of an assessment upon the property benefited for the purpose of raising the

money with which to pay the plaintiffs, as provided by the contract. The plaintiffs' right, therefore, to pursue the defendant for a breach of the contract is established.

We are thus brought to the last, but not the least, of the interesting questions presented by the appellant, which is that the court ought to have permitted the defendant to prove that the passage of the resolution of July 29, 1890, was corruptly procured. The importance of this question in this particular case is readily apparent. It is not pretended that the contract was substantially performed as to the construction of the first 1,453 feet of the sewer. The certificate of the engineer, which the contract says must be given in order to entitle the plaintiffs to the compensation provided for by the contract, does not assert that as to the portion of the sewer above referred to the contract was performed. On the contrary, the certificate is to the effect that performance in that respect is in accordance with the contract as modified by the resolution of July 29, 1890. If that resolution be void and of no effect, then the plaintiffs have not established their right to recover in this action; for they have not only failed to prove the making of the necessary certificate by the engineer, but they have failed to prove substantial performance on their part.

The question is also an important one in its public aspects, for, so far as we have observed, it has seldom been brought to the attention of the courts. The counsel for the respondent insists that the question was not before the court in such a manner as required it to pass upon the point involved. Let us inquire of the record whether he is right or not. The answer alleges, among other things, " that the said resolution, purporting to modify said contract, passed by the common council on the 29th day of July, 1890, as set forth in said complaint, was passed collusively, corruptly and fraudulently, and is the result of a corrupt bargain, in and by which it was agreed that a large sum of money should be paid by said contractors for a vote in favor of said resolution, which said money was paid, and that said resolution by reason thereof is null and void and of no effect as a modification of said contract."

During the progress of the trial the counsel for the corporation asked several questions which brought to the attention of the court and the counsel for the plaintiffs the defense relied upon by the city and which we have in part quoted. The court was inclined to the view that the resolution was a legislative act and could not be thus attacked, whereupon the defendant's counsel, for the purpose of raising the question in the briefest form, said : "I desire to show that Mr. Weston (plaintiff) procured a vote of one member of the common council by corrupt means; that a sum of money was paid by the plaintiff and accepted by a member of the common council in consideration of his vote for the adoption of that resolution and that the vote of such member was obtained and cast by him in consideration of the payment of such sum of money." This offer was denied and the evidence excluded by the court, the defendant excepting. It is not, of course, claimed that if the resolution was in fact procured to be passed by bribery, it would nevertheless constitute a valid and effective modification of the contract. That it would be void as against public policy is too clear to admit of discussion; but the contention rather is that the courts are without power to inquire into the matter. The reason assigned is that the act of the common council in passing this resolution was legislative in character and hence the motives that induced the members to vote for its passage, whether honest or corrupt, are not the subject of judicial investigation. It is true that the legislative department of the state government is sovereign, and hence the motives that induce its action cannot be the subject of judicial investigation. The Constitution also empowers the legislature by general laws to confer upon boards of supervisors of the counties of the state such powers of local legislation and administration as the legislature may from time to time deem expedient. (Const. art. III, § 27.) It has been held that the action of a board of supervisors in undertaking to establish a fire district in a town under section 37 of the County Law, is legislative in character and, therefore, not subject to review by certiorari, because the affidavits verifying

the petition did not state that the petition complied with the requirements of the statute. (*People ex rel. O'Connor* v. *Supervisors*, 153 N. Y. 370.)

In *People ex rel. Wakeley* v. *McIntyre* (154 N. Y. 628) it was held that within the limits of the power delegated to supervisors by the legislature under the authority conferred upon it by the section referred to, each board of supervisors is clothed with the sovereignty of the state to legislate as to all details, precisely the same as the legislature might have done in the premises. While that is so, there are many duties devolved upon boards of supervisors by the legislature which are not legislative in character, but are administrative, and in some instances *quasi* judicial in nature and not at all impressed with the character of sovereignty. Among other duties they are required to audit and allow claims against the county. If they arbitrarily refuse to audit a claim the court may, by mandamus, require them to take action thereon. (*People ex rel. Johnson* v. *Supervisors of Delaware Co.*, 45 N.Y. 196, 199.) So where the board of supervisors audit and allow to a public officer a sum in excess of that legally due him, the court will, by mandamus, and upon the application of a taxpayer, require the board to reconsider, revoke and annul the audit as to such excess. (*People ex rel. Lawrence* v. *Supervisors*, 73 N. Y. 173.)

While the acts of boards of supervisors, or boards of town auditors, in auditing the accounts within their jurisdiction, are, in the absence of fraud and collusion, final and conclusive and not the subject of attack in a collateral proceeding, they may, nevertheless, be attacked in such a proceeding in an action brought by a taxpayer under chapter 161 of the Laws of 1872. (*Osterhoudt* v. *Rigney*, 98 N. Y. 222.)

Many cases might be cited where boards of supervisors have been compelled to act by mandamus, where they have failed to perform the duties which the law enjoined upon them, as well as cases where their action, involving legal errors as distinguished from discretionary matters, have been reviewed by certiorari, and also where the audit has been attacked in a collateral action brought under the taxpayers'

statute, so-called. But it would serve no good purpose, as the cases already cited are sufficient to call attention to the fact that there are many administrative duties of boards of supervisors that are not impressed with the character of sovereignty. So, too, the legislature may confer upon common councils of cities authority to pass municipal ordinances. Such as are passed in pursuance of such authority have the force of law, and are as obligatory as if enacted by the legislature itself. (*City of Buffalo* v. *N. Y., L. E. & W. R. R. Co.*, 152 N. Y. 276.) But like boards of supervisors, a common council has many administrative duties that are not legislative in character, performance of which, at times, has to be compelled by the courts. Not infrequently in the case of special assessments for local improvements, such as the case at bar, actions are successfully prosecuted by taxpayers to set aside assessments against property on the ground that the assessments are illegal and void. In *Miller* v. *Amsterdam* (149 N. Y. 288), in pursuance of legislative authority, the common council undertook to, and did, pave a certain street, and to defray the expense thereof made an assessment against the property specially benefited, but the statute under which the common council attempted to act provided that the street could be paved only upon a petition therefor of the owners of a majority of the lineal feet fronting on the street. The petition presented, and upon which the common council acted, turned out not to have the requisite number of consents. This court held that the action of the common council was without jurisdiction, and affirmed the judgment setting aside the assessment against the property of the plaintiff, upon the ground that it was void.

If the common council in *Miller's* case, in the institution of proceedings to pave the street, had been acting in a legislative capacity and was sovereign in that which it did, then, necessarily, it would not have been open for inquiry by the courts whether it had acquired jurisdiction to legislate at all by the petition of the requisite number of lot owners. But it was not sovereign. It had no authority to act at all in the absence of a petition signed by the owners of a majority of the

lineal feet fronting on the street, and, therefore, its proceedings were not in accordance with the directions of the charter; and in attemping to act as it did, its proceedings were the subject of direct review by certiorari or to attack in a collateral action such as was made. If the action taken by a common council under the statute to pave a street be not sovereign and free from direct review or collateral attack in the courts, no more is the action of a common council, under a similar statute, to build a sewer; and it is yet more absurd to claim that the resolution by which the common council undertook to effect a compromise and settlement with a contractor to whom something was equitably due, though, perhaps, nothing legally, because of his failure to perform the contract in all respects, constituted a legislative act.

Having established by authority, to which very many citations in point in this state might be added, that the resolution in question constituted a part of the administrative duties of the common council, we come next to the question whether such a resolution, if passed by means of fraud and corruption, can be declared of no effect by the courts. This question is answered in the affirmative by *Talcott* v. *City of Buffalo* (125 N. Y. 280). That was an action by a taxpayer to prevent waste of or injury to the property of the municipality, the claim being that the common council of the city of Buffalo had passed the resolution over the mayor's veto, providing for the substitution of electric lights for gas, and that in pursuance of it the proper officers had entered into a contract with the electric light company, by which it had been agreed to pay an exorbitant price, and it was charged that the acts of the common council and its officers in the matter were illegal. The court held that, inasmuch as the action taken by the common council was clearly within its power and discretion, such an action could not be maintained without any charge or allegation of fraud, collusion, corruption or bad faith. While upon this proposition there was a dissent, all were agreed that, under the Taxpayers' Act, so called, the complaint would not have been demurrable had it alleged that the acts complained

37

of were without power, or that they were the result of corruption, fraud or bad faith amounting to fraud. That action, it is true, was brought under and by virtue of the provision of the statute giving to taxpayers the right by action in a proper case to interfere with the conduct of municipal officers. The title of the act first passed (Chap. 161, Laws 1872) was "An act for the protection of taxpayers against the frauds, embezzlements and wrongful acts of public officers and agents." It has since been amended and supplemented by various enactments, which need not now be referred to. This statute did not take away any right of action that the municipality had; and to avoid any possible opportunity for such a suggestion, the last sentence of the statute provided that it should not be so construed as to take away any right of action from any county, town or municipal corporation. The history attending the passage of this act, and of chapter 49 of the Laws of 1875, is a matter of common knowledge, and was well stated by Judge ANDREWS in *People* v. *N. Y. & Manhattan Beach R'y Co.* (84 N. Y. 565, 569), as follows: It " was passed in view of the fact that the city of New York had been grossly defrauded by the acts of municipal officers and others acting in collusion with them, and that large sums had been taken from the municipal treasury in the perpetration of the frauds committed. *These sums the city or county, one or both of them, might sue for and recover*, but resort to this remedy was embarrassed by the fact that the city and county governments were to a considerable extent under the control of the guilty participants in the fraud."

The effect of the legislation is to enable a taxpayer of the municipality, threatened with injury from its officers, and in certain cases the state, to accomplish by action not more than the proper municipal authorities can at all times accomplish, but such results as the municipal authorities can and should, but, because of carelessness or willful purpose, will not.

If it be the fact that the passage of this resolution was brought about by bribery of the members of the common council, a taxpayer, under the authority of *Talcott's Case*

(*supra*), could have maintained a suit against the city to enjoin it from paying to the contractors the amount claimed by them to be due under their contracts, for the reason that the statute confers upon him the authority to thus interfere for the protection of the municipal corporation, and that which he can accomplish by such a suit, the officers of the municipal corporation, whose duty it is to protect the corporate property from waste and injury, may bring about by a defense to an action brought by the contractor. It is urged by the respondent that the defendant is estopped by the conduct of its officers subsequent to the discovery by the common council of the alleged acts of bribery. But the difficulty with this contention is that it does not appear that the officers of the defendant knew of the alleged bribery at the time of the several acts which the plaintiffs rely upon to create an estoppel. It does appear that before the commission of some of the acts the common council caused an investigation of the charge of corruption to be made, but it is not shown that one of the outcomes of the investigation was the disclosure of the alleged acts of bribery that the defendant upon the trial offered to prove, and, therefore, it cannot be said that the action taken by the common council was with full knowledge of the situation.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except BARTLETT, J., dissenting, and MARTIN and VANN, JJ., not sitting.

Judgment reversed, etc.