## GRAY v. TOWN OF THERMOPOLIS.

### No. 2502.

District Court, D. Wyoming.

Oct. 30, 1936.

Myles P. Tallmadge, of Denver, Colo., for plaintiff.

C. W. Axtell, of Thermopolis, Wyo., and Edward E. Murane, of Casper, Wyo., for defendant.

KENNEDY, District Judge.

This is a suit to recover the sum of $4,963.97, with interest, on account of the alleged reduction by the defendant in assessments upon property holders in a local Improvement District to be collected for the purpose of paying the bonds issued by the municipality, of some of which the plaintiff is the owner and holder. In addition to the defense of general denial, the defendant asserts that the plaintiff, having had notice, is barred by the statute of limitations. Although not affirmatively raised by the answer, it is also contended that plaintiff's remedy, if any, is by mandamus against the officials of defendant. The cause was tried to the court without the intervention of a jury by stipulation and has been submitted on trial briefs.

Briefly stated, the facts developed by the testimony are that the Town of Thermopolis under the provisions of the Wyoming Statutes established a local improvement drainage, grading and paving district known as Paving District No. 4 and for the purpose of such improvement by ordinance issued improvement bonds for the principal sum of $44,500 of which at the time of the trial plaintiff was the owner and holder of $22,500; and that for the purpose of paying and retiring said bonds the municipality duly levied assessments upon the property within said District in the sum of $44,-735.98. Thereafter the records of the municipality seem to show that its Treasurer purported to reduce such assessments and sent out notices accordingly to the tax payers within the District by which the assessments so originally declared and levied were reduced by the sum of $4,963.97. The bonds and interest upon the same were paid each year until the year 1936. The plaintiff alleges in his petition that he did not make discovery of the irregularity until late in the year 1935, but the testimony seems to disclose that an inquiry was instituted in regard to the bonds as early as 1930. However, from a fair analysis of the evidence as to his knowledge and notice of what had taken place in connection with the collection of assessments, it clearly appears that his first complete advice of the condition which existed was when plaintiff received a report from Mrs. Axtell, whom he had employed to examine the records of defendant, which report was submitted to him on or about March 10, 1932. This cause of action was commenced on February 6, 1936. The bonds in suit provide that for the collection of the assessments levied in said District, the Town pledges the exercise of all its lawful corporate powers. The Wyoming Statutes concerning local improvements and the assessment to be made for the payment of the same provide, in Section 22-1520, W.R.S.1931, that when an assessment roll shall have been confirmed it shall be certified to by the City Clerk and transmitted to the City Treasurer for collection, and in Section 22-1521 that such assessment shall be a lien upon the property assessed from the time the assessment roll shall be placed in the hands of the officer authorized by law to collect the same when it shall be paramount and superior to any other lien or encumbrance except for general taxes.

As against the theory of plaintiff to the right of recovery, the defendant contends that any action of its Treasurer in the matter of the reduction in the amount of assessment is not binding upon the municipality, for the reason that it is governed and therefore bound only by the action of its Town Council. Cases are cited tending to show that those acts which are by charter delegated to the council can only be made binding upon the municipality when so performed by it through its council. But where a municipal officer delegated by law to perform certain acts performs them illegally, such acts are binding upon the municipality. In the case at bar the Town Treasurer is specifically delegated and authorized by law to collect the assessments for special improvements which are committed to his charge by the Town Council after being duly certified by the City Clerk. Among the many cases upon this point is that of the City of McLaughlin v. Turgeon, 8 Cir., 75 F.2d 402, which is representative of what the court conceives to be the law applicable to the circumstances outlined by the evidence. At page 407 of 75

F.2d the court uses the following language: "It is to be observed that this statute specifically confers on the municipality the power to collect special assessments for local improvements. Pursuant to this power, the proper municipal authorities, by contract, pledged the full faith and credit of the city to cause the special assessment to be collected and paid into a fund to be used solely for the payment of the assessment. The contract, being a valid one, imposed a duty upon the city to make the collection of the special assessment in the manner provided by law. To be sure, the city was not an insurer nor a guarantor of payment, but it was incumbent upon it to exercise due care and diligence in the performance of the obligation assumed, which the city had, under subdivision 76, § 6169, supra, power to assume. True, the law contemplates that the duty of the city in this regard shall be performed through a certain specified agency, to wit, the city auditor. In fact, the municipality must usually act through some agency, yet the duty so performed is no less that of the municipality because performed through the agency of the city auditor. As said by the Supreme Court in Barnes v. District of Columbia, 91 U.S. 540, 545, 23 L.Ed. 440: 'A municipal corporation may act through its mayor, through its common council, or its legislative department by whatever name called, its superintendent of streets, commissioner of highways, or board of public works, provided the act is within the province committed to its charge.' "

Again, in Hauge v. City of Des Moines, 207 Iowa 1209, 224 N.W. 520, at page 522, it is said: "It is evident on the face of the statutes that the county treasurer is merely an agency for the city for the purpose of collecting these taxes. The duty so to do is conferred upon him by statute, to the end that taxes of all kinds and descriptions that may be assessed against a given piece of property may be paid at one place. He must be looked upon, therefore, as an agent of the city for the specific purpose of receiving and collecting these taxes. How can the city, therefore, be heard to say that, because of the neglect or failure of one of its agencies in getting this money to it by the time the bond and interest are due, to wit, April 1st of each year, it has fully complied with the recitals of the bond? Again, under the answer of the defendant herein pleaded, it at all times knew of the condition that existed, and, having knowledge of such facts, it was bound to anticipate the very thing that did happen, and should have protected the bondholders against the same. · Having failed so to do, it breached the recital of this bond, and the matter pleaded by way of answer of the city is not a defense to the matters pleaded by the plaintiff, and the demurrer of the plaintiff was properly sustained."

■ As to the defense that the statute of limitations had run against the relief sought by plaintiff at the time the case was commenced, the view of the court has already been indicated in the statement of facts. It is the contention of the defendant that W. R.S. § 89-411, providing for·a four year limitation on an action for injury to the rights of a plaintiff not arising from contract, is applicable here. It may be assumed that such is the statute to be applied, and yet in the light of the evidence which seems to show that not until March 10, 1932, when the plaintiff received the report for which he had delegated a very competent person to compile for him, but did not have the full information as to the irregularities which took place in connection with the collection of assessments for paying the bonds and the fact that the suit was begun in February, 1936, it would seem that the statute is fully satisfied.

■ It is claimed by the defendant that the plaintiff is charged with notice of what the records of the municipality may show under the rule that public records are constructive notice to all persons whom they may affect. Such a rule is well recognized in connection with records which are by law required by some provision of statute. In this respect the rule is stated in 46 C.J. 550 as follows: "Record notice is such notice as is presumed to be imparted by recording with the proper authorities a properly drawn and properly acknowledged instrument. Notice by record is one kind of constructive notice. While it is frequently stated that the record of an instrument operates as constructive notice, a more accurate statement is that the record of any instrument entitled to be recorded will give constructive notice to the persons bound to search for it. But the matter of constructive notice from the record is entirely a creation of statute, and no record will operate to give constructive notice unless such effect has been given to it by some statutory provision."

Under the circumstances here it does not seem just and equitable to construe the rule in so broad a sense that it could be held to be the duty of a bondholder to be continuously searching the records of a municipality to ascertain whether or not the city officials were doing their duty as specifically required by the statute. It would seem that a bondholder might reasonably presume that such officials would perform their prescribed duties in connection with their trust obligation to its bondholders.

■■ The remaining defense in so far as any evidence in the case is applicable, although not mentioned in the pleadings, involves the contention that the plaintiff's remedy is by mandamus to compel the municipality to levy a re-assessment for the purpose of taking care of the deficiency. Much dispute has arisen and has been found in the books in regard to the circumstances under which a plaintiff holding special improvement bonds may be relegated in the first instance to a suit in mandamus to compel a city to re-assess. This court has so held in certain cases involving circumstances, however, unlike those in the case at bar. Here it must be remembered that the facts show, not a mere failure of the Town to collect assessments or the failure to take affirmative action looking to the matter of enforcing such collection; but the act of the Treasurer imputed to the municipality and therefore chargeable against it, is an affirmative act which specifically violated and offended against the positive duty placed upon that official by statute.

I believe that the true rule under such circumstances which distinguishes between the right to a remedy in mandamus and the right to recover direct against the municipality is found and clearly set forth in the case of Weston v. City of Syracuse, 158 N.Y. 274, 53 N.E. 12, at page 15, 43 L. R.A. 678, 70 Am.St.Rep. 472, the court says: "If he finds, as in the case of People ex rel. Ready v. City of Syracuse [144 N.Y. 63, 38 N.E. 1006], supra, that the city has not proceeded with reasonable diligence to collect the assessment, and turn over the proceeds to him, he may and should proceed by mandamus to compel such action on its part. But where a municipality disables itself from performing the contract by such action on its part as makes void, and therefore uncollectible, an assessment, for the purpose of providing compensation, or refuses to perform the contract on its part, as in Reilly v. City of Albany, 112 N.Y. 30, 19 N.E. 508, then an action against the city for the damages sustained by reason of its failure to perform the contract on its part may be maintained. It has been suggested that the two cases last referred to are in conflict, but they are not. The Ready Case points out that, prior to the breach of the contract by the municipality, the contractor's remedy is to apply for a mandamus to hasten municipal action in the absence of due diligence; while the Reilly Case, with equal clearness, marks out the path to be pursued by the contractor, where the other party, to wit, the municipality, either designedly or accidently puts itself in a position where it will not or cannot perform the contract on its part. In such a case the remedy is against the city for breach of the contract."

In the case at bar the municipality through its Treasurer has put itself in a position where it cannot perform the contract on its part, as evidenced by the provision of the bonds that it will exercise all lawful corporate powers in the premises. The irregular and unlawful acts of City and Town officials in dealing with trust funds created for the benefit of bondholders should not easily be condoned.

This analysis leads to the conclusion that the plaintiff has established his right of recovery against the defendant, and as a consequence the motion for judgment in his favor made at the close of all the evidence in the case must be sustained, and within ten days a judgment may be entered accordingly in his favor against the defendant for the amount claimed, with interest at the legal rate, together with costs, reserving to the defendant its proper exceptions in the premises.