## GRAY v. TOWN OF THERMOPOLIS.
### No. 2503.

District Court, D. Wyoming.
Oct. 30, 1936.

Myles P. Tallmadge, of Denver, Colo., for plaintiff.

C. W. Axtell, of Thermopolis, Wyo., and Edward E. Murane, of Casper, Wyo., for defendant.

KENNEDY, District Judge.

This is a sort of companion case to No. 2502, 33 F.Supp. 73, this day decided, except as it may vary as to the facts involved. Here the plaintiff sues to recover the sum of $4,721.37 on account of an alleged illegal diversion of funds in a different local improvement district of Thermopolis, to wit: Thermopolis Paving District No. 5. Issues were joined and the case went to trial to the court without the intervention of a jury by stipulation. The pertinent facts are that the Town of Thermopolis regularly constituted said paving district and fixed assessments upon the property therein contained in the sum of $83,597.60. Thereafter property owners of said district within the time designated by law made payments of their assessments in full in the amount of $2,893.53. On November 14, 1922, under the provisions of the ordinance authorizing the institution of said paving district, the defendant issued its improvement bonds in the principal sum of $80,500. The plaintiff is the owner of $15,000 of those bonds which are unpaid. On December 22, 1933, as shown by the official records of the defendant, the sum of $4,721.37 was transferred from the fund of Paving District No. 5 to the General Fund of the Town. Due demand was made upon the defendant for the payment of such amount and payment refused. The evidence tends to show that the defendant prior to the issuance of the bonds had advanced money out of its general fund for carrying on said improvement work in the district, which was actually in excess of the said $4,721.37.

The case turns upon the legitimacy and the legality of this transfer. As I view the situation, from the limited evidence submitted, the real question is as to whether the reimbursement by the defendant was made from the fund created by the ordinance through assessment of property owners for the liquidation of the bonds, or whether the reimbursement was made from the fund received from the sale of the bonds. Possibly if the latter transaction were carried out it might be held to be legitimate; whereas, the payment out of assessments which were pledged under the statute and in the bonds themselves for the payment of such bonds with interest are in their very nature trust funds which the municipality may not in any way divert or use except for the purpose for which such fund is created. So far as the record in this case is concerned, the court is left with the meager documentary evidence that the repayment to the general fund of the Town was made out of the assessment fund collected from property owners. Although counsel now attempt to assert this payment was made into the general fund from the cash received from sale of bonds, nowhere in the proofs as I remember, was attempt made at the trial to show that the

reimbursement to the general fund of the Town was made out of the funds realized from the sale of the bonds. The bare documentary record, without more, indicates that the transfer was made from assessment collections. Incidentally it appears that at least considerable more was paid to reimburse the general fund than that which had been collected in prepaid assessments prior to the issuance of the bonds. Manifestly, if the Town expected to reimburse itself for advancements made toward the improvements, it should have added such amount to the fixed assessments or alternatively have lowered the·bond issue by such amount. So far as the evidence shows it did neither and as a consequence the assessment fund was below the amount required for the protection of the bondholders. Inasmuch as the record on its face leads to the conclusion that the reimbursement to the general fund was made out of the assessment fund collected for the sole purpose of retiring the bonds together with interest, the court can arrive at no other conclusion than that this was a diversion of trust funds for which plaintiff as a bondholder is entitled to recover. The judgment must be in a limited sense that the recovery shall be applied to the liquidation of plaintiff's bonds in serial order, with interest only up to date of maturity. As indicated in No. 2502, looseness in the handling of funds devoted exclusively to trust purposes by municipal officials, especially concerning bonds sold to the public, should not receive the stamp of approval by the courts, as such bondholders are entitled to the highest good faith and regularity. In the event the defendant is able to collect assessments sufficient to liquidate the bonds and interest to maturity and the advancement in addition, there would seem to be no reasonable objection to a reimbursement to the Town out of the assessment fund; but if there should not be a sufficient amount it would not justify the Town in the illegal use of its trust funds, no matter how innocently the error may have been made or how pure its motive may have been in making it, for the reason that in any event it operates as a fraud upon the bondholders.

The other defenses concerning the notice of the plaintiff and the statute of limitations are substantially the same as those interposed in Case No. 2502, except that in this case they appear to be less substantial as to the actual proofs supporting those defenses. They are ruled adversely to the defendant here.

The motion for judgment on behalf of the plaintiff made at the close of the evidence will be sustained, and a judgment may be entered in favor of plaintiff and against defendant in the limited sense herein specified, within ten days from the date of this memorandum, with costs to plaintiff, and reserving proper exceptions to the defendant.