THE PEOPLE ex rel. ARMSTEAD C. HENRY and others, Commissioners, etc., Respondents, *v.* JAMES NOSTRAND, Supervisor, etc., Appellant.

Upon an order to show cause why a peremptory writ of mandamus should not issue, which order contains the usual clause, " or for other relief," the Supreme Court has power to grant a peremptory writ of mandamus, for any relief to which relator is entitled, although not specified in the order.

The mandatory part of the writ need only describe the thing to be done with reasonable certainty, so that defendant will know what is required of him.

Under the provisions of chapter 905 of the Laws of 1869 (authorizing the construction of a highway in the towns of Jamaica and Newtown, in the county of Queens), as amended by chapter 750 of the Laws of 1870, the supervisor of the town of Jamaica is required to pay over the moneys raised for the purposes of the act to the commissioners therein appointed.

The position of commissioner under that act is an office, and under section 1 of article 10 of the State Constitution, it is vacated by the acceptance of the office of sheriff by one of the commissioners.

When a person sets up a title to property by virtue of an office, and comes into court to recover it, he must be an officer *de jure*, as well as *de facto*, particularly where he acts against the express mandate of the Constitution in holding the office.

Under said act, where the office of one of the commissioners is thus made vacant by his acceptance of the office of sheriff, the other two commis-

sioners have no power to act while the vacancy exists; and the fact of the vacancy is a justification to said supervisor, in refusing to pay over the moneys collected.

The granting of a writ of mandamus, therefore, to compel such payment, is error.

(Argued September 12, 1871; decided November 10, 1871.)

APPEAL from the order of the General Term of the second judicial department, affirming an order directing a mandamus to issue requiring the defendant " to pay over to the relators, as commissioners, to lay out and construct a public road or highway in the towns of Jamaica and Newtown, the moneys raised by tax in the town of Jamaica, under chapter 750, Laws of 1870 of the State of New York, for the construction of said road, and which have been paid over to him, said supervisor."

The relators, at the time of making the demand, required the supervisor to pay to them the sum of $30,000, which was refused, upon the ground that the law did not give him authority to pay it over.

A tax of $30,000 had been imposed; and between $26,000 and $27,000 had been collected and paid over to defendant.

At the general election held in November, 1870, Armstead C. Henry, one of the commissioners, was elected sheriff of Queens county, and had accepted and entered upon the duties of the office.

No opinion was written either at Special or General Term.

*J. H. Bergen,* for appellant. Relators must show a clear legal right to the thing sought. (*People* v. *Booth,* 49 Barb., 31; *People* v. *Contracting Board,* 27 N. Y., 378.) If the relators ask too much, defendant entitled to judgment. (*People* v. *Supervisors of D.,* 1 Hill, 50; *People* v. *Supervisors of W.,* 12 Barb., 446; *People* v. *Barker,* 35 Barb., 105; *People* v. *Board of Supervisors,* 10 Barb., 233; S. C., affirmed on appeal, 21 How., 288.) There was no legal board of commissioners. (Constitution, art. 10, § 1; Bouvier's Law Dic., Title " Office "; *Henly* v. *Mayor of Lynn,* 5 Burg.,

9; Bacon's Abridg., Title Office, 20 Wend., 595; *People* v. *Hayes*, 7 How., 248; Laws 1869, ch. 905, § 1; 3 R. S., 5th ed., p. 869, § 29; *Keeler* v. *Frost*, 22 Barb., 401.)

*S. Hand*, for respondents. The commissioners are not officers. (*Sheboygan Co.* v. *Parker*, 3 Wall., 93.) The title to office cannot be inquired into collaterally. (*People* v. *White*, 24 Wend., 539; *People* v. *Hopson*, 1 Den., 597.)

CHURCH, Ch. J. It is objected that the order granting a peremptory mandamus should be reversed, because the mandatory part of the order varies from that of the order to show cause. The latter was an order to show cause, why a peremptory mandamus should not issue to compel the appellant to pay over $30,000 to the relators; the whole amount of the tax assessed upon the town of Jamaica, which it was alleged had been collected and paid over to the appellant, while the former required the payment of what actually had been collected and paid to him.

This court held in *The People* v. *The Supervisors of Delaware County*, that when proceedings for a mandamus are commenced, by an order to show cause why the defendant should not do a certain thing, the clause, " or for other relief," gave the court power to grant the writ for any relief to which the party was entitled, although the relief granted might not be the same as that specified in the order to show cause.

The court would, of course, exercise a sound discretion, and would deny the writ altogether, if it appeared that the relator was not entitled to the thing demanded, but was entitled to something which the defendant was willing to perform. In this case $30,000 was demanded. The appellant denies that he has received the whole of that amount, and alleges he has received not over about $27,000, but refused to pay the relators anything, claiming that they were not legally entitled to it.

In such a case the court had power, and it was proper to pass upon the point made by the defendant; and if that was

decided against him, to modify the writ so as to require him, to pay over the amount which he admitted he had in his hands. *It is unnecessary to determine,* whether this course would have been upheld if an alternative writ had first been issued, and the case heard upon an issue of law or fact joined upon the return.

It was also urged upon the argument that the order should be reversed, because the precise amount is not specified in the peremptory writ. This position is not tenable. All that is necessary is that the thing to be done should be described with reasonable certainty, with such certainty that defendant will know what is required of him. This rule is peculiarly applicable to public officers, who are commanded to perform a public duty, and especially where the facts constituting the act are within their personal knowledge.

Assuming that it was the duty of the appellant to pay over the whole $30,000, or so much thereof as he had received, when called upon for the whole, he answers, substantially, "I have only received about $27,000, but I refuse to pay over anything," on the ground that the persons demanding it are not entitled to receive it.

The court decided that these persons were entitled to receive it, and commanded the appellant to pay over what he had received. There is neither uncertainty nor injustice in this requirement. He knew how much he had received, and if he paid that sum he would be protected; if not, an attachment would rightfully issue against him. His duty was adjudged to be, to pay the money to the persons claiming it, and that duty was sufficiently defined in requiring him to pay all that he had received.

If he desired in good faith to comply with the writ, but was unable to do so from the uncertainty of the mandate, the court would doubtless relieve him; but in this case there was no room for doubt. The act to be performed was specifically described, and there is no pretence that the appellant did not know what was required, or that he was unable to perform it.

The authorities cited have no bearing upon this point. The leading case is *The People* v. *Supervisors of Dutchess* (1 Hill, 50), which was heard upon a return to an alternative writ, requiring the respondents to show cause why they should not be compelled to do two things. The court held that the relators were entitled to one and not the other, and rendered judgment for the defendants, holding that the requirement was an entirety, and must be sustained as such or fail, although the court intimated that there might be exceptions to that rule. But the question of the certainty of the mandate was not involved.

The other cases cited are of the same character, and do not relate to this point. The authorities, as well as general principles, are the other way. *Commonwealth* v. *Councils of Pittsburg* (34 Penn., 514) was a case heard upon a return to an alternative mandamus, requiring the respondents to raise the money by tax to pay the interest upon certain bonds. It was objected that the writ did not mention the amount of the interest due or the amount for which provision was to be made. The court overruled the objection and said: "It is, however, in this respect sufficiently certain. It describes the bonds, their dates and amounts. They are bonds of the city of Pittsburg. From the necessity of the case the amount of the unpaid interest must be known to the obligors. The extent of their duty is, therefore, defined."

In the case of *The Queen* v. *Com. of Southampton* (1 B. & S., 5), the respondents were required to take the necessary and legal "measures and proceedings for obtaining and recovering" of the Southampton Dock Company certain moneys, which it was alleged that company were bound to pay, and of which the relators, the mayor, etc., of Southampton, were entitled to a portion.

It was objected that it was not specified what legal measures the respondents were required to take, and it was conceded that if the construction of the writ was, that an action was to be brought, it could not stand; but the objection was overruled. CROMPTON, J., said: " But the only point necessary

·for us to determine, is whether the mandatory part of this writ is good. Now, I have always understood that in the law of mandamus, the rule is that the mandatory part of the writ may be very general, but that the return must, on the contrary, be very minute in showing the party did not do what he was commanded." The court decides, that as the mandatory part of the writ did not necessarily require an action to be brought, the writ should stand.

These and other authorities establish, that it is sufficient to inform public officers in a general way what their duty is, and to command its performance, unless they can justify or excuse the neglect. They cannot shield themselves behind technical objections to the descriptive part of the act to be done. The appellant in this case, it is just to say, did not attempt to do so, but relied upon the objection that the relators were not legally entitled to receive the money. But if this objection was valid, the court could modify the writ in this respect. (*People* v. *Sup'rs of Delaware, supra.*)

The most serious obstacle to the success of the relators, is the question as to their legal right to demand and receive this money, and the duty of the appellant to pay it to them. This is questioned upon two grounds. First, that the amended act of 1870 does not, in terms, require the defendant to pay the money to the commissioners. The original act of 1869 contained this express provision, as to moneys to be raised in Jamaica and in the town of Newtown; but the eighth section of that act was amended, so as to provide for raising money in Newtown by issuing and delivering bonds to the commissioners, while the proportionate share of the expense of Jamaica was to be raised as provided in the act of 1869, by taxation. Although the express provision to pay the money so to be raised to the commissioners is omitted in the act of 1870, the implication that this is to be done is manifest, from the general scope of the whole act, and from the express directions for them to use the money in a particular manner. The objects of the act could not be carried out unless the money was paid to them, and we think they were entitled to

receive it from the supervisor of the town. The second ground relied upon by the appellant, is that one of the commissioners had vacated the office, and that the other two had no right to act until the vacancy was filled. It appears that one of the commissioners, before the demand for this money was made, had been elected to and had accepted the office of sheriff of the county. Section 1 of art. 10 of the Constitution provides, that sheriffs shall hold no other office.

It is a settled rule, that the acceptance of an incompatible office, operates as a resignation of the incumbent of the office then held by him. (*People* v. *Carrique*, 2 Hill, 93, and cases there cited.) The constitutional provision above referred to makes the office not only incompatible, but expressly declares that sheriffs shall hold no other office. If, therefore, the position of commissioner, under the act in question, is an *office*, the relator, Henry, vacated it by accepting the office of sheriff. I have no doubt that it is an office. It is a public employment, for which the incumbent receives compensation. The duties to be discharged were of a public character. The commissioners were authorized to exercise a portion of the functions of government; they were intrusted with the power of taking private property for public use, by right of *eminent domain*, and authorized to receive and expend a large amount of money in the construction of a public improvement; and they possessed every attribute and characteristic of public officers, and come within every accepted definition.

"Office" is defined to be "a right to exercise a public function or employment, and to take the fees and emoluments belonging to it." (Bouvier, Title Office.) "The idea of an *officer* clearly embraces the idea of tenure, duration, fees or emoluments, rights and powers, as well as that of duty; a public station or employment; an employment confirmed by appointment of government." (Burrill's Dic., Title Office.) PLATT, J., in 20 J. R., 493, defined office to be "an employment on behalf of the government in any station or public trust, not merely transient, occasional or incidental." What

was intended by the qualifying words in this definition it is unnecessary to surmise, but they do not affect the question in this case. Chancellor SANFORD said " an office is a public charge or employment, and the term seems to comprehend any charge or employment, in which the public are interested." (See also 20 Wend., 26 ; 7 Howard, 248.)

Although the language is slightly different, the substance of all the authorities is uniform and clearly brings the position of the relators within the definition of an *office*. The expressions of GRIER, J., in 3 Wal., 93, are not antagonistic to the views above expressed. He said that " an officer of the county is one by whom the county performs its usual political functions, its functions of government;" and he held that persons appointed by the legislature, to execute certain bonds for the county, after the issuing of the bonds had been authorized, with the consent of the people, according to law, were not *county officers*.

The general principle laid down, although perhaps too broadly stated, is not objectionable; but whether the proper application of it was made to that case, it is unnecessary for us to determine. The question was raised against the validity of the bonds thus executed, and the court held, that the commissioners were the agents of the people for a special purpose; and having acted with the assent of the people, ascertained according to law, the county could not repudiate their acts. The decision does not aid the relators upon this question. It is, however, claimed that Mr. Henry was a commissioner *de facto ;* that his acts are valid as to the public, and that the defendant cannot question his title.

When a person sets up a title to property, by virtue of an office and comes into court to recover it, he must show an unquestionable right. It is not enough that he is an officer *de facto*, that he merely acts in the office; but he must be an officer *de jure*, and have a right to act. (*People* v. *Hopson*, 1 Den., 574, and cases there cited.) And this is especially so, when he acts against the express mandate of the Constitution, that he shall not hold the office.

Mr. Henry was, therefore, not a commissioner, and had no more right to act in that office than any other citizen, and his want of title is available in this proceeding.

He is seeking in this proceeding, to recover possession of this money by virtue of an office which he does not hold. The only remaining question is, whether the other two commissioners could act while the vacancy existed? I think not. The statute appointing them confers the power upon three, and provides that whenever the number of commissioners is reduced below three the vacancy shall be filled by the county judge. It is quite evident that the legislature intended to intrust the powers conferred to three persons, and that the judgment of that number should be requisite to the discharge of their duties. I am not aware of any principle, which enables two persons to discharge a public duty expressly devolved upon three without consultation with the third. At common-law two could act in such a case, but it was indispensable that the three should meet and deliberate upon the subject. (*Crocker* v. *Crane*, 21 Wend., 211; 7 Cow., 526, note *a;* 22 Barb., 400.) And this rule of the common-law has been confirmed and adopted by statute. (2 R. S., 555, § 27.) A majority may perform the duty after all have met and deliberated, but two cannot do this when the office of the third is vacant any more than they could if the third had not met or been consulted. The power was delegated to three persons, not to their survivors or to a majority, and provision was made to fill vacancies, so that three should at all times be in office. If two could act as survivors, why not one? No authority was cited on this point, but upon general principles, and the reason of the thing, it seems quite clear, that the two commissioners had no power to do any official act.

A somewhat analogous principle was decided in the case of the *Queen* v. *Wake* (92 C. L. R., 384), in which it was held that when one of two persons, appointed under a statute to execute jointly the office of clerk to a county court died, the survivor continued to hold the office, though he could not act, until a successor to the deceased person had been appointed.

The defendant was justified in withholding the money from the relators, because they had no legal right to demand it. He was a public officer and could keep the money, until it was claimed by officers lawfully entitled to act as such, and upon this ground the order must be reversed.

All concur.

Order reversed.