(11 Misc. Rep. 98.)

PEOPLE v. RATHBONE.

(Supreme Court, Special Term, Albany County. January 22, 1895.)

NOTARY PUBLIC—REMOVAL FROM OFFICE—TRAVELING ON FREE PASS.

A notary public is a public officer, within Const. art. 13, § 5, providing that any public officer who shall travel on a free pass shall forfeit his office.

Action by the people of the state of New York against William F. Rathbone to forfeit the office of notary public held by defendant. Defendant demurs to the complaint. Overruled.

Theodore E. Hancock, Atty. Gen., for the People.
Lewis E. Carr, for defendant.

HERRICK, J. This is an action commenced by the attorney general of the state to forfeit the office of the defendant as notary public. The plaintiff alleges that in January, 1894, the defendant was appointed a notary public in and for the county of Albany, by the governor of the state, and was confirmed by the senate; that thereafter he took his oath of office as notary public, and filed the same in the office of the county clerk of Albany county, and since then has been acting as notary public in and for the county of Albany; that, at the time of his appointment as notary public, he was possessed of a free pass, which entitled him to free transportation over the lines of the D. & H. C. R. R. Co., and that on the 2d day of January, 1895, the defendant, while traveling over the tracks of the D. &. H. C. R. R. Co., a railway corporation organized under the laws of the state of New York, from the city of Albany to the city of Troy, in this state, made use of such free pass, and received free transportation from such railroad company, which the complaint asserts to have been in violation of section 5 of article 13 of the constitution of the state of New York, and asks the judgment

of the court that it adjudge and decree that the defendant has forfeited his office, of notary public, and that he be evicted therefrom. The defendant demurred to the plaintiff's complaint, upon the ground that it "does not state facts sufficient to constitute a cause of action." The section of the constitution which it is alleged has been violated reads as follows:

"No public officer, or person elected or appointed to a public office under the laws of this state, shall directly, or indirectly, ask, demand, accept, receive or consent to receive for his own use and benefit, or for the use and benefit of another, any free pass, free transportation, franking privilege or discrimination in passenger, telegraph or telephone rates, from any corporation, or to make use of the same for himself or in conjunction with another. A person who violates any provision of this section shall be guilty of a misdemeanor, and shall forfeit his office at the suit of the attorney-general." Const. art. 13, § 5.

The first question that arises is whether a notary public is a public officer. "Every man is a public officer who hath any duty concerning the public." 7 Bac. Abr. "Office and Officers"; Tomlyn's Law Dict.; Hall v. Wisconsin, 103 U. S. 5. "An office is simply an appointment or authority on behalf of the government to perform certain duties at and for a certain compensation." Smith v. Mayor, etc., of New York, 37 N. Y. 518; People v. Nostrand, 46 N. Y. 375, 381. And the person who holds such office, appointment, or authority may properly be said to be a public officer. It seems to me that a notary public comes within these definitions of what constitutes a public office and a public officer. He is appointed by the executive authority of the state, and confirmed by the senate. He is appointed to perform certain public duties; some arising under the laws of the States, some under the laws of nations, some under commercial usage, and some are to be performed in pursuance of the laws of other governments and states. See Laws 1892, c. 683, §§ 81, 85. Some of his duties may be performed in any part of the state; others are limited to the county for which he shall have been appointed. He may protest commercial paper, take affidavits and acknowledgments, and, in some instances, take testimony in actions pending in other states. These are essentially public duties, and the argument that was made before me that the duties performed by him are at the instance and for the benefit of private persons does not conflict with the idea that a person who is appointed for the purpose of performing such offices for the benefit of private citizens is a public officer. Most of the duties imposed upon public officers, most of the acts that they do, are at the instance and for the benefit of private persons. The duties and powers conferred upon notaries public are of a character that it would not be safe to permit every citizen to discharge for their mutual benefit without any sense of official responsibility. To expedite both public and private business, and for the purpose of authenticating business transactions for the public benefit, as well as for the benefit of individual citizens, this particular office has been created, and the powers of the persons holding it defined. It seems to me, therefore, that a notary public is a public officer. It is contended on behalf of the defendant that he is not a "public officer" within the meaning of the constitution; and it is

argued that, in order to discover the true intent and meaning of the section, we must examine into the reason for its adoption and the evils it was intended to cure; and it is asserted that the mischief intended to be guarded against "was the possibility of persons discharging public duties being affected in such discharge by consideration for railroad companies or other companies of that class, giving them free passage or privileges. To constitute such mischief, it is absolutely necessary that the one prohibited from receiving such privileges should be an officer discharging a duty to the public, and it would seem to be equally necessary that it should appear that the duty was of such a character that there would be reason to apprehend that the acceptance and use of it would tend to such a discharge of the duty as would be against the interests of the people and favorable to the company." And it is contended that the duties of a notary public can in no way be influenced by the granting or withholding of a pass, and, therefore, that the holder of such office does not come within the intent of the constitutional provision. If there was any ambiguity in the language used in the constitution, if the phraseology was indefinite or uncertain, there might be some reason for our attempting to inquire into the reasons for adopting this provision, and the abuses it was intended to correct. But there is no such uncertainty. The language used is: "No public officer or person elected or appointed to a public office under the laws of this state." That is equivalent to any and all public officers. It makes no distinction, but includes every and all officers within the boundaries of the state. When we are asked to look beyond or behind the language used, for the purpose of ascertaining the mischief against which the prohibition was directed, and thus restrict its operations, we are asked to go into an exceedingly dangerous field of inquiry. The danger of seeking a meaning and interpretation by such means is very forcibly presented by Chief Justice Bronson in People v. Purdy, 2 Hill, 31. Each class or kind of public officers in the state could be taken in turn, and as to each it might be held that it did not refer to them, because the mischief intended to be prevented could not be worked by them in their particular official positions; and, as to others, the court might well say that it would not presume that such officials could be guilty of the mischief aimed to be prevented, and, therefore, that such officials did not come within the meaning of the constitution. One class after another might be thus eliminated until the clause in question would be a dead letter. The language used is apt, broad, and comprehensive, and "we are not at liberty to presume that the framers of the constitution, or the people who adopted it, did not understand the force of language." People v. Purdy, 2 Hill, 31. The language is so clear and precise here that there is no need of interpretation. "It is not allowed to interpret what has no need of interpretation. When an instrument is worded in clear and precise terms,—when its meaning is evident, and leads to no absurd conclusions,—there can be no reason for refusing to admit the meaning which the words naturally import. To go elsewhere in search of conjectures in order to restrict or extend it is but to elude it." Vattel, bk. 2, c. 17, § 263; Newell v.

People, 7 N. Y. 9. Courts will not seek to elude or evade the constitution, but rather to enforce and uphold its true intent and meaning; and, where the language is clear and unambiguous, that intent and meaning is to be gathered from the language used; and, where plain, ordinary words are used, they will give them the meaning that is ordinarily attached to them at the time they were used, and not attempt to inject into them a new force and meaning, or by judicial construction deprive them of their full power and significance. In this case, plain, ordinary, comprehensive words have been used, words with a well-understood meaning; and the only function for the court, therefore, is to declare the law as it is written. As the constitution has recognized no difference between public officers, the court can recognize none. For these reasons, the demurrer must be overruled, with costs, with leave, however, to the defendant to plead over as he may be advised upon payment of such costs.