THE STATE OF FLORIDA EX REL. W. H. ELLIS, AS ATTORNEY GENERAL, RELATOR, v. ATLANTIC COAST LINE RAILROAD. COMPANY, A CORPORATION, RESPONDENT.

1. While the courts, on a proper case made, will by mandamus require a railroad company to put and maintain its roadbed and track in a condition that renders them reasonably safe and adequate for the public purposes and uses to which they are devoted, yet the character, quality and quantity of the materials and appliances to be used will be left to the proper discretion of the railroad company.

2. Where an alternative writ of mandamus, brought to compel a railroad company to put and maintain the roadbed and track on its main lines in a safe and suitable condition for the public service required of it, states by definitely named termini the location of the several parts of the main lines of the respondent's railroad and alleges "that said roadbed has an uneven and irregular surface; a

large percentage of the crossties under the rails are rotten and wholly incapable of supporting the rails with the weight of one empty car thereon. At divers places along the said main lines of railroad and for great distances, the iron spikes which are driven into the crossties to support the rails can be lifted from the crossties with the naked hand; that many of the angle bars or plates on the main lines, and bolts used in the same, are broken, and that in many places the angle plates are not fastened with the requisite number of bolts," such allegations, if true, show the main line of the road as a whole to be in an unfit and unsuitable condition for rendering the public service in which it is used, and are sufficient to be answered, since the duty is a general one due to the public and the breaches complained of are peculiarly within the knowledge of the respondent railroad company.

3. A railroad company has a proper discretion in the performance of its duty to the public even when done in good faith under the command of judicial process; therefore, while mandamus will issue in a proper case to compel a railroad company to put and maintain its roadbed and track in a safe and suitable condition to meet the requirements of the public service, the court will not ordinarily by mandamus command the use of materials and appliances of stated character, number and dimensions, since such matters are within the discretion of the railroad company properly exercised.

4. Allegations of an alterative writ of mandamus which are relevant to the issues and not otherwise improper will not be stricken on motion.

This case was decided by the Court En Blanc.

This is a case of Original Jurisdiction.

## STATEMENT.

Within the time allowed by the court by its order made February 20th, 1907, the attorney general presented the following alternative writ on February 27th, 1907.

"The State of Florida to the
  Atlantic Coast Line Railroad Company.

Permission of the court being first had and obtained upon application of the relator in the above stated cause, it was ordered that the alternative writ hereinbefore issued herein, be and the same is hereby amended so as to read as follows: Whereas, by a petition filed in this court in the name of the state of Florida upon the relation of W. H. Ellis, as attorney general of said state, it has been made to appear:

1st. That the Atlantic Coast Line Railroad Company is a railroad corporation, doing business under the laws of the state of Florida, in said state, and is in possession of, controls and pretends to operate certain lines of railroad lying wholly in the state of Florida, to wit: A line of railroad from Palatka in Putnam county to Rochelle in Alachua county, thence in Marion county, thence to Leesburg in Lake county and to Brooksville in Hernando county; and from Croom in Hernando county to St. Petersburg in Hillsborough county, and from Bartow in Polk county to Punta Gorda in DeSoto county; also a line of railroad from Ocala in Marion via Dunnellon in said county to Gulf Junction in Citrus county, and from thence to Homosassa in said county, and from Gulf Junction in Citrus county to Croom in Hernando county, and from Trilby in Pasco county to Bartow in Polk county.

2nd. That the line of railroad aforesaid from Palatka

to Rochelle, thence to Ocala, thence to Leesburg and Brooksville, and from Bartow to Punta Gorda, was constructed and built under and by virtue of a charter granted by the state of Florida to the Gainesville, Ocala and Charlotte Harbor Railroad Company, to which said railroad company the state of Florida, by chapter 3167 of the laws of 1879, approved March 4th, 1879, granted large donations of land belonging to the state of Florida, to aid in the construction of the lines of railroad of said corporation. The said railroad corporation received from the state of Florida, pursuant to said land grant, two million six hundred and twenty-two thousand three hundred and sixty-two and forty-five one-hundredths (2,622,362.45) acres of land.

3rd. That the line of railroad aforesaid beginning at Ocala in Marion county and running via Dunnellon and Gulf Junction to Homosassa in Citrus county, and from Gulf Junction to Inverness in said county, was constructed and built under and by virtue of a charter granted by the state of Florida to the Silver Springs, Ocala & Gulf Railroad Company, to which said railroad company the state of Florida, by chapter 3170 of the laws of 1879, approved March 12th, 1879, granted large donations of land belonging to the state of Florida, to aid in the construction of the lines of railroad of said corporation. The said railroad corporation received from the state of Florida, pursuant to said land grant, three hundred and thirty-nine thousand eight hundred and seven and fourteen one-hundredths (339,807.14) acres of land.

4th. That the line of railroad aforesaid from Inverness in Citrus county to Croom in Hernando county, and thence to Trilby in Pasco county, and thence to Bartow

in Polk county, was constructed and built under and by virtue of a charter granted by the state of Florida to the South Florida Railroad Company, to which said railroad company the state of Florida, by chapter 3491 of the laws of 1883, approved March 5th, 1883, granted large donations of land belonging to the state of Florida, to aid in the construction of the lines of railroad of said corporation. The said railroad corporation received from the state of Florida, pursuant to said land grant, sixty-five thousand one hundred and ninety-two and seven one-hundredths (65,192.07.) acres of land.

5th. That the line of railroad aforesaid from Trilby in Pasco county to St. Petersburg in Hillsborough county was constructed and built under and by virtue of a charter granted by the state of Florida to the Orange Belt Railroad Company, to which said railroad company the state of Florida granted large donations of land belonging to the state of Florida, to aid in the construction of the lines of railroad of said corporation. The said railroad corporation received from the state of Florida, pursuant to said land grant, eighty-eight thousand six hundred and eighty-seven and ninety-two one-hundredths (88,687.92) acres of land.

6th. That afterwards by various purchases, transfers, mergers and consolidations the said Atlantic Coast Line Railroad Company acquired all the franchises, properties and lines of railroad as hereinbefore described, of the said railroad companies, and came into the actual possession thereof, and is now pretending to operate said lines of railroad as a common carrier, and thereby became and was obligated to the state of Florida to maintain and operate said lines of railroad as a common carrier and faithfully to perform the public trust imposed upon and

694    SUPREME COURT OF FLORIDA.

State ex rel. Ellis v. A. C. L. R. R. Co.—Statement of Case.

accepted by it, that is to say: the said Atlantic Coast Line Railroad Company, by reason of the foregoing facts, is, and since October 1st, 1905, has been obligated unto the state of Florida to accept and receive, transport and deliver, with reasonable safety and dispatch, all freight offered to it along said lines of railroad, proper to be transported by common carrier, in this state, and to furnish ample *facilities* for transporting the same in the manner aforesaid, at the reasonable tariff and charges adopted by said corporation and then in force, and to transport with reasonable safety and dispatch all passengers over said main line of railroad, and to provide reasonably safe and convenient *facilities* therefor, and to that end to maintain and keep its roadbed and track in a reasonably safe and suitable condition and repair; but the state of Florida, by the said W. H. Ellis, as attorney general of said state, avers and informs your honors, that the said Atlantic Coast Line Railroad Company, through its officers, agents, employees and servants, has, since the first day of October, A. D. 1905, failed and is now failing in the performance of its said public duty along and over the main lines of railroad as above described, and to perform the public trust conferred upon it as aforesaid and accepted by it as above set forth, to the wrong, injury and great inconvenience of the public, that is to say:

7th. The said Atlantic Coast Line Railroad Company has carelessly and negligently, and in violation of its duty to the state and the public, since the first day of October, A. D. 1905, failed, and is failing to keep and maintain its roadbed and track in good repair, and in fit and suitable condition for the proper transportation of freight and passengers over its said main lines of railroad and the safe movement of its equipment thereon;

that it has allowed from the date aforesaid, and is allow-
ing its roadbed and track to run down, deteriorate, and
become unfit and unsuitable for the proper movement of
its equipment thereon and the transportation of freight
and passengers thereover; that the said roadbed and
tracks on said main line, in their present condition, are
and constitute a danger and a menace to the lives and
limbs of the passengers on said railroad, and the freight
transported thereover; that said roadbed has an uneven
and irregular surface; a large percentage of the cross-
ties under the rails are rotten and wholly incapable of
supporting the rails with the weight of an empty car
thereon.   At divers places along the said main lines of
railroad and for great distances, the iron spikes which
are driven into the crossties to support the rails can be
lifted from the crossties with the naked hand; that many
of the angle bars or plates on the main lines, and bolts
used in the same, are broken, and that in many cases the
angle plates are not fastened to the rails with the requi-
site number of bolts; and that on account of the unsafe
and dangerous and bad condition of the roadbed and
track as aforesaid, numerous casualties have recently
occurred upon said main lines of railroad, resulting in
the destruction of and injury to human life, and great
damage to property.   The state of Florida, by W. H.
Ellis, attorney general, shows unto your honors *that in
order to place* the said main lines of railroad in a fit and
suitable condition to enable the said Atlantic Coast Line
Railroad Company to faithfully and properly perform its
public trust and the duties devolving upon it as afore-
said, it is necessary that the roadbed and tracks of said
main lines of railroad should be repaired by making and
constructing an even and regular surface on said road-

bed, and by adding to the sound ties now upon said main lines of road a sufficient number of new, sound crossties of the following dimensions, to wit: nine feet long, seven inches thick and nine inches wide and showing a heart face of seven inches to make two thousand six hundred and forty such crossties upon each and every mile of the main lines of said railroad, and that said number of such ties be maintained on each and every mile of said main lines, and by fastening the ends of the rails together with unbroken and complete joints by joining the ends of the said rails with two angle bars, four bolts and nuts at each joint, and by fastening each rail along said main lines of railroad to the crossties thereunder by two standard spikes driven into each crosstie and by fastening each rail on said main lines to the crossties with two standard spikes driven into each crosstie.

But the said Atlantic Coast Line Railroad Company has failed since the first day of October, A. D. 1905, and is failing to maintain and keep its said roadbed and track along its said main lines of railroad in suitable and fit condition for the transportation of freight and passengers thereover, by failing to make and construct and maintain an even and regular surface on its said roadbed along the main lines of said railroad, and by failing to replace the rotten crossties on said main lines so as to keep and at all times maintain on its said main lines two thousand six hundred and forty crossties of the kind, quality and dimensions above mentioned and described and by failing to fasten the ends of the rails on said lines together with unbroken and complete joints by joining the ends of the rails with two angle bars, four bolts and nuts at each joint and by fastening each

rail on said main line to the crossties thereunder with two standard spikes driven into each crosstie.

8th. All of which failures and omissions on the part of the said Atlantic Coast Line Railroad Company, to perform and discharge its duties and obligations to the said state of Florida, as aforesaid, has resulted and is resulting in great confusion, inconvenience, hindrances, delays and injury to the public generally in the state of Florida.

9th. That the state of Florida, by W. H. Ellis, as attorney general of said state, further shows unto and informs your honors that the people of the state of Florida are entirely without remedy in the premises unless it be afforded by the interposition of this honorable court through a writ of mandamus.

Now, therefore, we, being willing that full and speedy justice be done in the premises, do command you, the Atlantic Coast Line Railroad Company, to forthwith repair and put in reasonable safe and suitable condition and maintain the same in such condition, your roadbed and track over and along the main lines of railroad from Palatka in Putnam county to Rochelle in Alachua county, thence to Ocala in Marion county, thence to Leesburg in Lake county, and to Brooksville in Hernando county; and from Croom in Hernando county to St. Petersburg in Hillsborough county, and from Bartow in Polk county to Punta Gorda in DeSoto county, and from Ocala in Marion county via Dunnellon in said county to Gulf Junction in Citrus county, and from thence to Homosassa in said county, and from Gulf Junction in Citrus county to Croom in Hernando county, and from Trilby in Pasco county to Bartow in Polk county, by making, constructing and maintaining an even and regular surface on the

roadbed along the main lines of said railroads, and by adding to the sound crossties now on the main lines of said road, a sufficient number of new, sound crossties of the following dimensions, to wit: nine feet long, seven inches thick, nine inches wide, showing a heart face of seven inches, to make two thousand six hundred and forty of such crossties upon each and every mile of the main lines of said railroad, and that said number of such ties be maintained on each and every mile of the main lines of said railroad, and by fastening the ends of the said rails on said main lines of railroad together with unbroken and complete joints, by joining the ends of said rails with two angle bars, four bolts and nuts at each joint, and by fastening each rail to the crossties thereunder by two standard spikes driven into each cross-tie, or that you appear before the justices of our supreme court sitting within and for the state of Florida, at the court room in the city of Tallahassee on the 29th day of January, A. D. 1907, at ten o'clock a. m. of said day, and show cause why you refuse to do so and have you then and there this writ.

Witness the Honorable Thomas M. Shackleford, Chief Justice of the Supreme Court of the State of Florida, and the seal of the said Court at Tallahassee, the Capital, this the 11th day of January, A. D. 1907.

(Seal)                       M. H. Mabry,
          Clerk Supreme Court State of Florida."

The respondents were given until March 12th to reply thereto, upon which day the following motion to quash and motion to strike were presented and argued:

"Now comes the defendant in the above entitled cause and moves the court to quash the amended alternative

writ of mandamus issued herein on the following grounds, to wit:

1.   The facts alleged in the said amended alternative writ do not constitute a cause of action authorizing the relief prayed for.

2.   The allegations of fact in said amended alternative writ contained are too vague, indefinite and uncertain to be replied to by this respondent.

3.   The said amended alternative writ fails to conform to the directions of this court in its order authorizing said amended writ.

4.   Because the relator has failed in the amended writ to eliminate those matters which the court held in its decision of this case should be eliminated therefrom and on the ground that this court has not the power to deal therewith.

5.   Because the mandatory part of said writ does not conform to the allegations of said writ.

6.   Because the duties required of the respondent in the construction and maintenance of its roadbed and track permit of some discretion in the manner in which the same shall be constructed and maintained; whereas, the mandate of this court, if in accordance with said amended alternative writ, does not permit of any such discretion.

7.   Because the amended alternative writ lays down an arbitrary and inflexible standard of construction and maintenance of roadbed and track, which cannot be a subject of adjudication by the court.

8.   Because the court is asked to fix a specific and arbi-

trary standard of construction and maintenance of railroad, roadbed and track, which can only be done by legislation."

"And now comes the defendant in the above entitled cause and moves the court to strike the following portions of the several paragraphs of the amended alternative writ of mandamus, to wit:

1.   That portion of the second paragraph of said amended alternative writ of mandamus beginning with the words 'to which' to the end of said paragraph.

2.   That portion of the third paragraph of said amended alternative writ of mandamus beginning with the words 'to which said railroad company,' and ending with the last word in said paragraph.

3.   That portion of the fourth paragraph of said amended alternative writ of mandamus beginning with the words 'to which said railroad company,' and ending with the last word of said paragraph.

4.   That portion of the fifth paragraph of said amended alternative writ of mandamus beginning with the words 'to which said railroad company,' and ending with the last word of said paragraph.

5.   And also that portion of the sixth paragraph of said amended alternative writ of mandamus as follows: 'that is to say: the said Atlantic Coast Line Railroad Company, by reason of the foregoing facts, is, and since October 1st, 1905, has been, obligated unto the state of Florida to accept and receive, transport and deliver, with reasonable safety and dispatch all freight offered to it along said lines of railroad, proper to be transported by a common carrier in this state, and to furnish facili-

ties for transporting the same in the manner aforesaid, at a reasonable tariff and charges adopted by said corporation and then in force, and to transport with reasonable safety and dispatch all passengers over said main line of railroad, and to provide reasonable, safe and convenient facilities therefor.'

And for grounds of said motion assigns the following:

1.  Because the said allegations above mentioned are each and every of them immaterial and irrelevant to the decision of this cause.

2.  Because the said allegations would tend to hinder and embarrass a fair trial of the issues involved in this cause.

3.  Because the said allegations and each and every of them should have been eliminated from said amended alternative writ of mandamus under the decision of this court already rendered in this cause."

*W. H. Ellis,* Attorney General, for Relator;

*W. E. Kay, Jno. E. Hartridge, R. A. Burford* and *Sparkman & Carter,* for Respondent.

WHITFIELD, J.: In the former opinion in this cause the duty of the respondent and the right of the relator were thus defined: "The duty of providing a reasonably safe and sufficient roadbed, track, equipment and facilities and of maintaining and operating the property in a proper condition for rendering safe, prompt and adequate service, and of actually rendering to the public such service without unjust discrimination, being required for the public good and contemplated by law and im-

posed upon a common carrier railroad corporation in permitting the exercise by it of the franchises and privileges of a common carrier, the performance of this duty may be enforced by mandamus in a proper case upon the relation of the attorney general where no other adequate remedy is provided by law." "When a railroad company permits its roadbed and track to become and remain so palpably unfit for use in rendering the service of a common carrier that it endangers the lives and property of the public to whom the service is extended, and the law provides no other adequate remedy, the company may by mandamus, upon proper allegations, be compelled to put and keep its roadbed and track in a condition reasonably sufficient to meet the requirements of the public service it engages to perform." "If made sufficiently definite the mandate as to repairing the roadbed and track may be enforced in this proceeding, as there does not appear to be another adequate remedy provided by law for failure to perform such duty."

The amended alternative writ alleges the duty of the respondent to furnish ample facilities for transporting and to receive and transport with reasonable safety and dispatch, at reasonable tariff and charges, all freight and passengers properly offered along the lines of railroad mentioned in the writ, and to that end to maintain and keep its roadbed and track in a reasonably safe and suitable condition and repair; but avers that respondent through its officers, agents, employees and servants has, since October 1st, 1905, failed and is now failing in the performance of its said duty along and over the main lines of railroad as described, and to perform the public trust conferred upon it and accepted by it to the wrong,

injury and great inconvenience of the public, that is to say: the respondent has carelessly and negligently, and in violation of its duty to the state and the public, since October 1st, 1905, failed and is failing to keep and maintain its roadbed and track in good repair, and in fit and suitable condition for the proper transportation of freight and passengers over its said main lines of railroad and the safe movement of its equipment thereon; that it has allowed from the date aforesaid and is allowing its roadbed and track to run down, deteriorate and become unfit and unsuitable for the proper movement of equipment thereon and the transportation of freight and passengers thereover; that the said roadbed and tracks on said main lines, in their present condition, are and constitute a danger and a menace to the lives and limbs of the passengers on said railroad, and the freight transported thereover; that said roadbed has an uneven and irregular surface; a large percentage of the crossties under the rails are rotten and wholly incapable of supporting the rails with the weight of an empty car thereon. At divers places along the said main lines of railroad and for great distances, the iron spikes which are driven into the crossties to support the rails can be lifted from the crossties with the naked hand; that many of the angle bars or plates on the main lines, and bolts used in the same, are broken; and that in many cases the angle plates are not fastened to the rails with the requisite number of bolts; and that on account of the unsafe and dangerous and bad condition of the roadbed and track as aforesaid, numerous casualties have recently occurred upon said main lines of railroad, resulting in the destruction of and injury to human life, and great damage to property; that in order to place the said main lines of railroad

in a fit and suitable condition to enable the respondent to faithfully and properly perform its public trust and the duties devolved upon it, it is necessary that the roadbed and tracks of said main lines of railroad should be repaired by making and constructing an even and regular surface on said roadbed; and by adding to the sound ties now upon said main lines of road a sufficient number of new, sound crossties of the following dimensions, to wit: nine feet long, seven inches thick and nine inches wide and showing a heart face of seven inches to make two thousand six hundred and forty such crossties upon each and every mile of the main lines of said railroad, and that said number of ties be maintained on each and every mile of said main lines, and by fastening the ends of the rails together with unbroken and complete joints by joining the ends of the said rails with two angle bars, four bolts and nuts at each joint, and by fastening each rail along said main lines of railroad to the crossties thereunder by two standard spikes driven into each crosstie and by fastening each rail on said main lines to the crossties with two standard spikes driven into each crosstie. But the respondent has since October 1st, 1905, failed, and is failing to maintain and keep its said roadbed and track along its said main lines of railroad in suitable and fit condition for the transportation of freight and passengers thereover, by failing to make and construct and maintain an even and regular surface on its said roadbed along the main lines of said railroad, and by failing to replace the rotten crossties as stated above. The mandatory part of the writ conforms to the allegations above set out.

It is contended that the allegations of the writ do not confine the alleged breach of duty to the alleged unsafe

and unsuitable condition of the roadbed and track because in stating the duty of the respondent the expression "and to furnish ample facilities for transporting the same" is used, thereby indicating that other considerations than the condition of the roadbed and track cause the breach of duty complained of. Even if this expression were objectionable on motion to quash it is used only in stating the duty, and the context limits it to the roadbed and track. The charging part of the writ limits the breach of duty to the improper condition of the roadbed and track, and the command is confined to the roadbed and track.

The contention that the amended writ requires the roadbed and track to be maintained according to an arbitrary standard as to the number and dimensions of the crossties to be used is well taken. While the courts, on a proper case made, will by mandamus require a railroad company to put and maintain its roadbed and track in a condition that renders them reasonably safe and adequate to the public purposes and uses to which they are devoted, yet in the selection of the material and appliances, and as to the details of the dimensions, number &c. thereof to be used in such repairs and maintenance, the railroad company has a proper discretion which will not be dictated to or interfered with by the courts, unless abused to the palpable detriment of the public service the company has to perform. In this respect, while the alternative writ presents an issue that may be joined in by the respondent, yet it is an issue which the court will not determine on the case as made here. The requirement of the alternative writ that the respondent be compelled to repair its roadbed so that it shall have a regular, smooth

45—S C(

and even surface is not, under the circumstances of this case, either so vague, indefinite or uncertain that it cannot be intelligently answered. The issue so tendered is as to facts that are or should be pecularily within the knowledge of the respondent railroad company, and that may be easily answered and disproved by the respondent if untrue.

It is urged that the allegations and command of the amended writ are not sufficiently definite and specific to be answered by the respondent. When a writ of mandamus issues to enforce the performance by a common carrier of its duty to the public the mandatory clause of the writ should state with sufficient definiteness the particular duty required to be performed so as to enable the defendant to perform the duty with the writ as the guide. Where the duty is a general one and its nature is such that some discretion in the performance of it is vested in the respondent, and the character of the duty and the particulars of the breach as alleged in the writ are peculiarly within the knowledge of the respondent, a general allegation of the duty to the public with statements as to the violation of the duty by non-performance or otherwise, in terms sufficient to enable the court to specifically enforce a compliance with the mandate, will be sufficient on motion to quash the writ. See People v. Nostrand, 46 N. Y. 375, text 378; High on Ex. Legal Rem., sections 536 and 561; Rex v. Bristol Dock Co., 6 B. & C. 181; 2 Spelling on Ex. Rem. section 1968; People ex rel. Green v. D. & C. R. R. Co., 58 N. Y. 152, text 162; 6 Ency. Pl. & Pr. 271.

The allegations of the amended alternative writ "that said roadbed has an uneven and irregular surface; a large percentage of the crossties under the rails are rot-

ten and wholly incapable of supporting the rails with the weight of an empty car thereon. At divers places along the said main lines of railroad and for great distances, the iron spikes which are driven into the crossties to suport the rails can be lifted from the crossties with the naked hand; that many of the angle bars or plates on the main lines and bolts used in the same are broken, and that in many cases the angle plates are not fastened with the requisite number of bolts;" are not too vague, indefinite and uncertain to be answered by the respondent. If these allegations are true a breach of duty is made clearly apparent. The writ gives in detail by definitely named termini the location of the several parts of the main lines of the respondent's railroad complained of. If the road bed and track on the main lines are in the condition described in the above allegations the main line of the railroad as a whole must be in an unfit and unsuitable state for the public service in which it is used. The duty of the respondent to maintain the roadbed and track in a suitable condition for rendering the public service is a general one, and necessarily requires the respondent to have a more or less detailed knowledge of every portion of the roadbed and track; consequently any failure to perform its duty in regard thereto is especially within the knowledge of the respondent, and more specific allegations as to the points at which and particulars in which the breaches of duty occur are not required in a case where a general duty to the public is sought to be enforced. The allegation is of a general duty which the respondent owes to the public, and not a particular duty due to an individual. The failure to put and maintain the roadbed and track in a proper condition for rendering adequate service to the public is the breach of

duty alleged, the particulars of this breach are peculiarly within the knowledge of the respondent, since it has exclusive control and possession of the roadbed and track in the public use to which it is assigned. The allegations as to the uneven and irregular surface of the roadbed and condition of the crossties and angle bars and bolts on the roadbed and track, are sufficient to apprise the respondent as to the charge of a breach by it of its duty to the public in not maintaining in suitable condition property constantly used by it while performing a general duty to the public. The respondent has a proper discretion in the performance of its public duty even when such duty is performed in good faith under the command of judicial process. The writ is not subject to the objections made to it except as to the details of the materials to be used in repairing the roadbed and track herein above pointed out. The allegations are sufficiently specific and definite to guide the respondent in the performance of a general duty to the public in particulars more especially within its own knowledge, and the writ will not be enforced so as to withhold from the respondent the discretion it is entitled to exercise in good faith in complying with the mandate.

The court will take judicial knowledge of the indisputable fact that a railroad is in an unsafe and unsuitable condition for the public service required of it, when a large percentage of the crossties under the rails are decayed and wholly incapable of supporting the rails with the weight of an empty car thereon, and at divers places for long distances along the line of railroad the iron spikes driven in the crossties to support the rails can be lifted from the crossties with the naked hand,

and many of the angle bars or plates and bolts used to fasten the rails together are broken and missing from the ties on a railroad, as is alleged in the alternative writ in this case. When this condition exists the court will issue its writ commanding the railroad company to put and maintain its roadbed and track in a reasonably safe and suitable condition adequate to meet the reasonable requirements of the public service. The particular number and dimensions of the crossties and other materials and appliances to be used will be left to the *bona fide* exercise of the reasonable discretion of the company. When a reasonably suitable, safe and sufficient roadbed and track and accompanying appurtenances are furnished and maintained so as to meet the reasonably just requirements of the public service, the law in that regard is satisfied.

The first four divisions of the motion to strike relate to the allegations in paragraphs 2, 3, 4 and 5 of the alternative writ as to lands granted by the state to the several companies which were merged into the respondent company. These allegations cannot be said to be wholly irrelevant to the duties and obligations of the respondent involved in this proceeding, and when not improper they should not be stricken from the writ. The taking of testimony under the allegations will be within the control of the court.

The motion to strike also covers the following portion of the sixth paragraph of the alternative writ: "that is to say: the said Atlantic Coast Line Railroad Company, by reason of the foregoing facts, is and since October 1st, 1905, has been, obligated unto the state of Florida to accept and receive, transport and deliver, with reasona-

ble safety and dispatch, all freight offered to it along said lines of railroad, proper to be transported by a common carrier in this state, and to furnish ample facilities for transporting the same in the manner aforesaid, at the reasonable tariff and charges adopted by said corporation and then in force, and to transport with reasonable safety and dispatch all passengers over said main lines of railroad and to provide reasonably safe and convenient facilities therefor." The duty to transport with reasonable safety and dispatch and for a reasonable compensation all freight and passengers properly offered along the main lines of the railroad necessarily includes the duty to maintain a suitable and proper roadbed and track on said main lines, over which to transport the freight and passengers, therefore the statement of the duty of the respondent as quoted should not be stricken.

The motion to strike parts of the alternative writ is denied. The motion to quash the alternative writ will be granted unless the relator shall within five days from the 19th day of March, 1907, amend the same so that it shall not undertake to dictate the dimensions, number or details of the crossties or other material to be used by the respondent in the repair of its roadbed and track, but so that it shall generally require the respondent to put and maintain its roadbed and track along its main lines in a reasonably safe and suitable condition reasonably adequate to meet the requirements of the public service it has undertaken to perform, by replacing all decayed crossties with sound ones of such material and of such dimensions as will be reasonably adequate to the demands of the public service to be performed on such roadbed and track, and by replacing and properly securing all

defective, broken and missing angle bars or rail connections with sound ones, and by adequately spiking its rails to its crossties, and by putting the surface of its road bed along said mentioned main lines in a reasonably safe and adequate state of evenness and smoothness. If the alternative writ shall be so amended the respondent shall have until April 9th, 1907, in which to plead. Copies of this order and of the alternative writ as it may be amended shall be promptly mailed by the clerk of this court to the respondent's counsel.

SHACKLEFORD, C. J., TAYLOR. COCKRELL, HOCKER and PARKHILL, JJ., concur.