PEOPLE ex rel. BOARD OF COM'RS FOR ERECTION OF A NEW
COURT HOUSE IN ONEIDA COUNTY et al. v. BOARD OF
SUP'RS OF ONEIDA COUNTY.

(Supreme Court, Special Term, Onondaga County.  December, 1901.)

1. COUNTY OFFICERS—BOARD TO ERECT COURT HOUSE.
    Laws 1901, c. 89, creating a board of commissioners with power to
acquire a site for and build a court house and sell the old one, and re-
quiring the county board of supervisors to issue bonds to pay the expense
thereof, does not make the members of such commission county officers,
within Const. art. 10, § 2, requiring county officers whose election or ap-
pointment is not provided for by the constitution to be elected by the
county electors or appointed by the county authorities.

2. SAME.
    Laws 1901, c. 89, constituting certain residents of the county a board
to erect a court house for the county, does not unduly deprive the county
board of supervisors of its legitimate duties.

3. SAME—COUNTY SUPERVISORS.
    Laws 1901, c. 89, creating a county board for the erection of a court
house, is not in violation of Const. art. 3, § 27, providing that the legis-
lature shall, "by general laws," confer such powers of local legislation
and administration on county supervisors as the legislature may from
time to time determine.

4. SAME—POWERS.
    A special act depriving a board of supervisors of the right to build
a court house is within the power of the legislature.

5. SAME—ISSUE OF COUNTY BONDS.
    Laws 1901, c. 89, requiring the county supervisors to borrow money
and issue bonds for the erection of a court house, is not unconstitutional,
as requiring the county to issue bonds against its will, because the county
supervisors are unwilling to do so.

6. LOCAL ACT—TITLE.
    Laws 1901, c. 89, is not unconstitutional, as a local law embracing
more than one subject, in that it authorizes both the sale of an old
court house and the building of a new one.

7. MANDAMUS—WHEN GRANTED.
    A writ of mandamus is the proper remedy to compel board of county
supervisors to issue bonds as provided by statute.

8. SAME.
    Where a valid statute directed the board of supervisors to borrow
money and issue bonds, and the board showed its intent to disregard the
statute, a peremptory writ of mandamus will issue to compel the per-
formance of such duty.

Application by the people, on the relation of the board of commis-
sioners for the erection of a new court house in Oneida county, and
others, against the board of supervisors of Oneida county, for a writ
of mandamus requiring such board to borrow on the credit of the
county such sum as shall be sufficient to meet the expenditures of the
commissioners in the erection of a new court house as authorized by
law. Writ granted.

Thomas S. Jones, for the motion.

Bradley Fuller, Matteson & De Angelis, and McMahon & Larkin,
opposed.

W. S. ANDREWS, J.   Chapter 89 of the Laws of 1901, took effect
on March 12th of that year. It constituted certain residents of

Oneida county a board of commissioners to acquire a site and furnish a new court house in the city of Utica for the use of the county, and to sell the present court house and site and the present county clerk's office and site in Utica, and conferred upon them the power to acquire the land necessary for the purpose by purchase or by condemnation proceedings. It then regulated the organization and proceedings of the board, and directed that it should "cause to be erected, completed and furnished, ready for use, a suitable building, upon the site acquired, for the use of the county of Oneida, as a courthouse and for other public purposes." For this building the board was to adopt plans, let contracts, and superintend the construction, but the entire cost of the whole proceeding was not to exceed $350,000. The expense incurred was to be borne and paid by the county of Oneida, and it was made "the duty of the board of supervisors of said county of Oneida to borrow, upon the faith and credit of said county, such a sum of money as shall be sufficient to meet and pay all the expenditures which the said board of commissioners is authorized by this act to make, and to issue the bonds of said county therefor, bearing interest at a rate not exceeding three and one-half per centum per annum, payable semi-annually; the principal of said bonds shall be made payable at such time and times within forty years from the respective date of issue, and such amount in each and every year from the date of issue, as shall be fixed and determined by the board of supervisors of said county, excepting, however, that not less than seven thousand dollars of the principal of said bonds shall be made payable and shall be paid in each and every year." Regulations were then made as to the form of the bonds, and it was provided that they should be issued and negotiated by the county treasurer "as the proceeds thereof shall be required by said board of commissioners for the purposes provided for in this act." This officer was to keep a separate account of the moneys raised upon the bonds, and pay therefrom, "upon the order of said board of commissioners, from time to time, such amounts as shall be required to pay the expenditures which said board of commissioners are empowered by this act to make." Finally, the act directed the commissioners to sell the present court house and the present county clerk's office, and to pay the proceeds of such sale to the county treasurer to the credit of the county of Oneida.

In pursuance to this statute the commissioners met on March 30, 1901, and organized by the election of a chairman and secretary. Thereafter, on May 13th, the board selected a site upon which to erect the building, and passed a resolution requesting the board of supervisors to issue the bonds of the county for the purposes specified in chapter 89 of the Laws of 1901, and place them in the hands of the county treasurer. On May 20th a copy of this resolution, certified by the chairman and clerk of the board of commissioners, was mailed to each supervisor of the county of Oneida, and also to the board itself, in care of its clerk. A special meeting of the board of supervisors was thereafter called for the 17th day of June, 1901, for the purpose of taking action upon the request of the board of commissioners. At such special meeting the resolution and request of

the commissioners was received and placed on file, but the board
of supervisors adjourned without taking any action thereon.   The
regular meeting of the board of supervisors occurred in the fall of
1901, and on the 22d day of November a resolution was presented,
reciting the statute referred to, the action of the commissioners and
their request, and directing the issue of $350,000 worth of bonds in
the form specified by the statute.   No objection seems to have been
taken to the form of this resolution, or to the provisions contained in
the proposed bonds, but the resolution was defeated by a decisive
vote.   Thereafter, and on the same day, a second resolution was pre-
sented, which stated that the act of the legislature was taken without
any expression of a desire by the people of the county, and that they
were overwhelmingly opposed to the construction of the court house,
and therefore requested the legislature to amend chapter 89 by sub-
mitting the question as to whether or not the court house should be
built to the people of the county.   This resolution was adopted.
This is the only action taken by the board of supervisors on the sub-
ject of borrowing money or issuing bonds for the erection of the
court house, and the annual session of the board will shortly end.
Without some action by the board, the commissioners are wholly
unable to discharge their duties.   They are without funds, and cannot
obtain funds except as provided by statute.   The board has directed
the immediate institution of condemnation proceedings to acquire
property included in the proposed site, and the necessity for money is
present and imminent.   Therefore, in consideration of these facts,
and on November 26, 1901, the commissioners resolved that the pres-
ent proceedings should be instituted.

The affidavits presented by the defendant in answer to the present
application put at issue none of the facts alleged.   They show that
prior to the act of 1901 the board of supervisors of Oneida county had
initiated proceedings to build a court house in Utica, as they were
authorized to do under the general county law.   A committee of in-
vestigation had been appointed in April, 1900.   They made a favor-
able report in the fall of that year, and the board adopted a resolution
expressing their decision to erect a court house at an expense not to
exceed $150,000, and appointing a special committee to have charge
of the building, to call for options for sites, and to report to the board.
The committee so appointed had conferences with representatives of
the Utica Chamber of Commerce and with representatives of the bar
of Oneida county, prepared blank forms of options, contracted with
architects for preliminary work, incurred considerable expense in
various ways, received options, and was about to report its decision,
when the board of supervisors was served with an injunction, ob-
tained in a taxpayer's action, prohibiting it from proceeding further
in this matter.   This injunction was subsequently vacated on the
ground that the papers on which it was obtained did not justify its
issuance.   Subsequently the board was informed that another simi-
lar injunction had been obtained, and would be served if it should
take any further steps toward the construction of the court house.
The affidavits then deny, on information and belief, that the board
of commissioners has made any contract binding upon it for the

purchase of any parcels of land, and deny that any condemnation proceedings have been instituted. It further alleges that the "board of commissioners held no meeting on the 13th day of May, 1901, as alleged in the moving papers, and that no resolution or notice of or from said board of commissioners was served upon said board of supervisors on the 16th day of May, 1901, as alleged in the moving papers." Finally, the attorney for the board states that he is familiar with the circumstances connected with the matter, and that he verily believes that the board of supervisors was acting in good faith, and would have built a suitable court house for the county of Oneida if it had not been interfered with. Upon these papers the relators ask that a writ of peremptory mandamus be issued out of this court, compelling the board of supervisors to issue the bonds of the county in the sum of $350,000. The defendants, on the contrary, claim that the papers presented raise an issue of fact upon material questions before the court, and that, therefore, no peremptory writ should be issued. They also say that the statute under which the relators claim to be acting is unconstitutional and void, and therefore may not be enforced. And, lastly, they argue that the issuance of a peremptory writ of mandamus is a discretionary matter, and that, under all the circumstances disclosed in this case, the courts should refuse to grant the application.

It is not urged by the defendants that the remedy sought is not applicable. Such a proposition could not be sustained. A mandamus against a public officer or board is a proper remedy to compel the performance of a ministerial duty plainly prescribed, and it may be invoked in behalf of any party interested in its performance on the failure of the officer or board to do the act or thing required. People v. Maher, 141 N. Y. 330, 36 N. E. 396. "The primary object of a writ of mandamus is to compel action. It neither creates nor confers power to act, but only commands the exercise of powers already existing, when it is the duty of the person or body proceeded against to act without its agency. * * * When the law requires a public officer to do a specified act, in a specified way, upon a conceded state of facts, without regard to his own judgment as to the propriety of the act, and with no power to exercise discretion, the duty is ministerial in character, and performance may be compelled by mandamus, if there is no other remedy. When, however, the law requires a judicial determination to be made,—such as the decision of a question of fact, or the exercise of judgment in deciding whether the act should be done or not,—the duty is regarded as judicial, and mandamus will not lie to compel performance." People v. Commissioners of Land Office, 149 N. Y. 26, 43 N. E. 418. The duty of the defendants in this case would seem to be purely ministerial, within the definition given. The statute makes it the duty of the board of supervisors to issue bonds of the county. It may, it is true, regulate the minor conditions contained therein, but the bonds themselves are to be issued. As to this the board is given no discretion. It is required to make no judicial determination. It may not exercise its judgment as to whether the proceeding is wise or not. We may therefore consider

solely the questions raised by the defendants, and they can best be discussed in the order in which they are presented.

1. In determining whether or not this is a proper case for granting a peremptory writ of mandamus, all relevant facts stated in opposition to the application are deemed to be true. The proceeding is in the nature of a demurrer to the facts properly pleaded by the defendant. People v. New York Cent. & H. R. R. Co., 156 N: Y. 570, 51 'N. E. 312. Now, the matters denied by defendant's papers, even assuming that denials on information and belief raise an issue, are wholly immaterial. Whether or not the board of commissioners has made contracts for the purchase of lands, or has begun condemnation proceedings, affects in no way its right to call upon the supervisors for action. Whether or not the commissioners held a meeting "on the 13th day of May, 1901, as alleged in the moving papers," or on some earlier or later day, is unimportant. It is not denied that a resolution was properly adopted by them at some time, and that this resolution came to the notice of the board of supervisors. Nor is the denial that the resolution in question was served upon the board of supervisors "on the 16th day of May, 1901, as alleged in the moving papers," any more material. As a matter of fact, the moving papers contained an allegation that it was served upon the supervisors on the 20th day of May; but, whether it was or not, I may again repeat, it was brought to the attention of the board. As to the various affirmative allegations that bear upon the question as to whether or not this court should, in its discretion, grant the writ prayed for, their effect will be considered later.

2. The principal argument of the defendants is that chapter 89 of the Laws of 1901 conflicts with section 2 of article 10 of the constitution of the state. This section is to the effect that:

"All county officers, whose election or appointment is not provided for by this constitution, shall be elected by the electors of the respective counties or appointed by the boards of supervisors, or other county authorities, as the legislature shall direct. * * * All other officers, whose election or appointment is not provided for by this constitution, and all officers, whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the legislature may direct."

It is said that the power to build court houses in their respective counties has, for many years, been conferred upon the board of supervisors, and that the creation of a board of commissioners to erect a particular building for this purpose is the appointment of county officers by the legislature, and not by the electors of the counties, or other local authorities, and that such officers are not county officers whose offices were created by law subsequently to the adoption of the constitution. If either of these propositions is unsound, the law is constitutional, so far as this section is concerned. In my opinion, the board of commissioners are not county officers within the meaning of this section of the constitution. It is true that the boards of supervisors have conferred upon them by general laws, among other powers, that of constructing court houses in their several counties; but it does not follow that because this power has been conferred upon county officers, as the supervisors undoubtedly are, that every one on whom the like power is conferred is a county officer. Super-

visors are constitutional officers. Their rights and duties generally are such as had for many years existed at the time the constitution was adopted, and a law which deprived them of all their powers would doubtless be invalid. But, on the other hand, the legislature may to some extent modify and regulate these powers. The test is whether the act called in question is an attempt to evade the fundamental law, or whether it is merely a permissible modification of the supervisors' duties. People v. Keeler, 29 Hun, 175; Astor v. Mayor, etc., 62 N. Y. 567; In re Mayor, etc., of New York, 99 N. Y. 570, 2 N. E. 642. A statute depriving a board of supervisors of the power to build a certain court house seems to me to belong to the latter class. It is a power that, in the nature of the case, may be seldom exercised by the board; and, even when this power is taken away, the board remains substantially the board of supervisors. If this be so, the legislature may compel the board by legislative enactment to provide for the construction of a court house, or the legislature may itself direct the work, or it may commit the same to the care of agents selected by it. People v. Bachellor, 53 N. Y. 128, 13 Am. Rep. 480; People v. Cheritree, 6 Thomp. & C. 473. The agents so selected are not county officers. The distinction is carefully stated in City of Syracuse v. Hubbard, 64 App. Div. 587, 72 N. Y. Supp. 802:

"If the legislature, in providing for the accomplishment of a particular specific object, which it has power to accomplish, designates some person to perform a specific duty that might be performed by a local city or town officer, the fact that such person is charged with that duty does not make him a city or town officer, within the meaning of the constitution, so long as the general duty or functions of the local officers are not interfered with."

This definition is sustained by Sheboygan Co. v. Parker, 3 Wall. 93, 18 L. Ed. 33; People v. McDonald, 69 N. Y. 362; Greaton v. Griffin, 4 Abb. Prac. (N. S.) 310; Hanlon v. Supervisors, 57 Barb. 383, 397. There may be considerable doubt whether the relators are public officers at all. In re Hathaway, 71 N. Y. 238; U. S. v. Hartwell, 6 Wall. 385, 18 L. Ed. 830; State v. Kennon, 7 Ohio St. 546; In re Attorneys' Oaths, 20 Johns. 492. But in view of People v. Nostrand, 46 N. Y. 375, and In re Ryers, 72 N. Y. 1, 28 Am. Rep. 88, it is better to restrict this decision to the determination that the relators are not county officers. It should perhaps be observed that, in view of the language of the statute creating a park commission for the city of Hornellsville, People v. State Board of Canvassers, 129 N. Y. 360, 29 N. E. 345, 14 L. R. A. 646, has no bearing upon the case at bar.

It is next said that the act is in violation of section 27 of article 3 of the constitution, which provides that:

"The legislature shall, by general laws, confer upon the boards of supervisors of the several counties of the state such further powers of local legislation and administration as the legislature may, from time to time deem expedient."

It is said that, such powers being conferred by general laws, it follows by implication that the legislature may not enact a special act depriving the supervisors of any county of the powers possessed by them. This proposition is not sustained by authority, and general

usage and practical construction, if nothing else, seem to show that the contention of the defendants is erroneous.

It is also said that the act is unconstitutional because it requires the county of Oneida to make a contract against its will, to wit, to issue bonds to raise the fund for the erection of a new court house. I know of no provision which deprives the legislature of this power.

Lastly, it is said that the act is unconstitutional because it is a local bill, embracing more than one subject,—not only does it treat of building a court house, but of selling the old site. The argument is unsound. The main purpose of the bill is to confer upon the commissioners appointed the general power to erect and furnish a new court house in Oneida county. As a part of this scheme, all matters fairly and reasonably connected with it, and all measures which will facilitate its accomplishment, and are germane to it, may be incorporated in the act. Sweet v. City of Syracuse, 129 N. Y. 316, 27 N. E. 1081, 29 N. E. 289; In re Mayor, etc., of New York, 99 N. Y. 570, 2 N. E. 642. It would seem that the disposal of the present county buildings was legitimately and naturally connected with a plan to erect new ones; that it was entirely pertinent to such a plan, and necessarily a part of it.

3. The defendants also take the position that, even assuming that this legislation does not violate the express provisions of the constitution, still this court should, in its discretion, refuse the relief asked for. It is said that the board of supervisors, being possessed of the power, initiated steps looking to the construction of a court house; that while these steps were pending some person or persons pretending to be taxpayers of Oneida county improperly delayed action by use of the orders of the court, and that pending such delay, against the wishes of the taxpayers of the county, the bill in question was hurried through the legislature. It is perfectly true that the right to a writ of mandamus is not absolute, and that whether or not the court shall grant this particular relief rests largely in its sound discretion. People v. Wendell, 71 N. Y. 171. As is said by the court of appeals:

"The writ will be granted to prevent a failure of justice, but never to promote manifest injustice. It is a remedial process, and may be issued to remedy a wrong, not to promote one; to compel the discharge of a duty which ought to be performed, but not to compel the performance of an act which will work a public and private mischief, or to compel a compliance with the strict letter of the law in disregard of its spirit or in aid of a palpable fraud." People v. Board of Assessors of Brooklyn, 137 N. Y. 204, 33 N. E. 145.

But, if there is any wrong committed in this case, it consists in the fact that the legislature, moved by unworthy motives, or unwisely, or unadvisedly has passed an act against the best interests of the county, and which the majority of the voters in the county oppose. Courts do not sit, however, to review the discretion of the legislature, or to determine the propriety or expediency of its acts. Its action is conclusively presumed to be just and wise and proper, and for a court to refuse to enforce the legislative mandate because it disagreed with the wisdom of the legislative course would be not the wise exercise of its discretion. Assuming, therefore, that the act is con-

stitutional; assuming, as must be done, the truth of the uncontested allegations contained in the papers upon which this application is made,—we have a case where the supervisors are bound, as ministerial officers, to perform a certain act. This performance, it is true, they have not refused in words, but the whole course of their transactions, and particularly the resolution with regard to appealing to the legislature in the future, shows an intent on their part to disregard the plain injunctions of the statute. It shows a determination to refuse or evade the execution of the duty which the legislature has imposed upon them. This should not be permitted, and, where necessary, their obligation to obey the statute should be enforced by mandamus. It is possible that the supervisors might have refused to issue the total amount of $350,000 until the necessity arose, but there was a total failure on their part to act at all, and I do not understand that any question is raised as to how far the mandamus should go if one is allowed.

I am therefore of the opinion that the prayer of the relators should be granted, and that a peremptory mandamus should issue as desired by them. A proper order may be prepared by the attorney for the relators, and, if not agreed upon, will be settled upon two days' notice.

Ordered accordingly.