In the Matter of the Application of MICHAEL FINIGAN and Others, Composing a Majority of the Common Council of the City of Norwich, Petitioners, for a Mandamus Order against FRANK ZUBER, Mayor of the City of Norwich, Respondent.

Supreme Court, Chenango County, December 31, 1934.

*Lynn N. Peterson*, for the petitioners.

*James S. Flanagan* [*Donald S. Whitney* of counsel], for the respondent.

McNaught, J.  At a special election held in the city of Norwich on the 25th day of May, 1934, a resolution was duly adopted authorizing the common council of the city of Norwich to purchase additional fire equipment and expend therefor a sum not exceeding $18,000.  The proposition then adopted authorized the issuance of bonds not exceeding the sum of $18,000, the proceeds to be used in the purchase of such equipment.

The common council on June 26, 1934, adopted specifications for the equipment to be purchased, and after publication of notice that bids would be received therefor, on July 12, 1934, awarded contracts for two Challenger 600-gallon pump and hose carts with 100-gallon booster tank, all in strict accordance with city of Norwich, N. Y., specifications, to the American-LaFrance & Foamite Industries, Inc., and for one Buffalo Type S-L city service truck, to be built in accordance with such specifications, to the Buffalo Fire Appliance Corporation.  The common council then adopted a motion authorizing the mayor and city clerk to execute contracts. At such meeting the respondent announced to the common council " that he would refuse to execute the above contract on the ground that the specifications as drawn made it impossible for the bids to be competitive."

Contracts for the purchase of such equipment were thereafter signed by the petitioner Leroy McNitt as acting mayor.

Subsequently, at a meeting of the common council on August 28, 1934, a resolution was duly passed providing for the issuance of bonds in the sum of $18,000 to defray the cost to the city of said equipment, and prescribing the form thereof.  The resolution authorized and instructed the mayor, city chamberlain and city clerk " to sign, execute and seal said bonds," and provided that the same be sold by the city chamberlain, after giving public notice, on the 21st day of September, 1934, at two P. M.  The records of the common council state that " After the adoption of this resolution Mayor Zuber again informed the Council that he would refuse to sign the Fire Appropriations Bonds, believing that the procedure

had been illegal." The record fails to disclose whether the bonds were sold or not. The bonds were prepared and the respondent has refused to sign them as mayor of the city of Norwich.

The petitioners instituted this proceeding to procure a peremptory mandamus order directing the respondent to sign the bonds in question. The court issued an alternative mandamus order and upon the return of the respondent, the issues joined were tried before the court without a jury.

The petitioners contend that the acts of the common council were valid and legal, and being acts of the administrative authority of the city within its jurisdiction, cannot now be questioned by the respondent by his refusal to perform the purely ministerial act of attaching his signature to the obligations authorized to be issued by the common council.

The respondent contends that if the acts of the common council were illegal and improper, and by the procedure adopted competitive bidding was prevented, he as mayor, by refusing to perform the ministerial act of affixing his signature to the bonds, may raise the question of legality, the same as such question could be raised in a taxpayer's action. He also contends that the contracts signed by the acting mayor were void, in that such official was without authority to bind the city.

We are of the opinion there is no merit in the contention of respondent relative to the acting mayor signing the contracts. It is undisputed that when the contracts had been prepared and were presented for signature, the respondent was absent from the city of Norwich. We do not regard the statement or announcement made by the respondent at the meeting of the common council as conclusive, or as indicating definite official action.

The charter of the city of Norwich (Laws of 1914, chap. 34, as amd.), section 42, provides in substance that when the mayor, by reason of sickness or absence from the city, is unable to attend to the duties of his office, a member of the common council who has been selected shall act as mayor during such disability or absence. Such acting mayor is authorized to perform all the duties and have all the powers of the mayor, except he does not have power to make appointments or removals from office. The mayor being absent from the city, the acting mayor had the authority to perform all the functions and exercise all the powers of the mayor. The contracts, therefore, are not invalid because they were signed by the acting mayor.

The resolution of the common council provided the contracts should also be signed by the city clerk. We regard this as mere surplusage, as the charter of the city of Norwich provides specifically in section 41, relating to the general powers and duties of the mayor:

"He shall sign, on behalf of the city, all written contracts made by it or by any board or officer thereof, and cause the seal of the city to be affixed thereto."

Without doubt, all of the questions as to the legality of the proceedings of the common council which respondent seeks to raise in this proceeding could be raised in a taxpayer's action brought under the provisions of section 51 of the General Municipal Law. In fact, issues of the nature here presented should properly be brought through the regular procedure provided by statute for that purpose, viz., action by a taxpayer.

To hold, as contended by respondent, without limitation or restriction, that an executive or administrative officer may refuse to perform a ministerial act because forsooth he does not agree with the action taken by the board or body charged with the responsibility of determining the questions presented, practically establishes the principle that courts may, at the behest of officers charged with performing a ministerial act, determine the propriety of the determinations of the Legislature or administrative departments of government in a municipality. The principle urged is not the law. Refusal must rest upon solid and substantial legal foundations. Were the question presented in the first instance we would have grave doubt as to the propriety of permitting such procedure. The question presented, however, has been passed upon and determined by authority which we deem it our duty to follow. That mandamus will lie in a proper case to compel the proper officer to issue bonds for public purposes is well settled by authority. (*Holroyd* v. *Town of Indian Lake*, 180 N. Y. 318; *People ex rel. Brewster* v. *Bd. Suprs. Westchester Co.*, 173 App. Div. 953; affd., 219 N. Y. 582; *People ex rel. Commissioners* v. *Bd. Suprs. Oneida*, 36 Misc. 597; affd., 68 App. Div. 650; affd., 170 N. Y. 105.) It has been held specifically, however, that mandamus will not be granted to compel the issuance of bonds to pay for a municipal improvement where it is doubtful if the proceedings under which the improvement was made were regular. (*People ex rel. Dady* v. *Supervisor*, 89 Hun, 241; reargument denied, 91 id. 206.)

Mandamus will lie to compel the performance of a ministerial duty relative to a city contract. If, however, it appear upon application for a peremptory mandamus to compel the signing of a contract by the mayor, that circumstances and conditions cast suspicion upon the transaction, a peremptory writ will be refused and an alternative writ issued. (*People ex rel. Lighton* v. *McGuire*, 31 Misc. 324.) In refusing to grant a peremptory writ, but issuing an alternative writ, ANDREWS, J., in the *McGuire* case, after citation of authority and discussion of the distinction between ministerial

and judicial duties, after stating that a peremptory writ of mandamus would not be granted in every case where an officer refused to execute a contract, although the same was formally authorized by the body possessing the power to make it, at page 327, said: "If the action of that body is the result of fraud or bad faith, proof of such fact, in a taxpayer's action, would justify a judgment for the plaintiff. (*Talcott* v. *City of Buffalo*, 125 N. Y. 280.)

"What a taxpayer may do, the officers of a municipality may do in an action brought against the corporation. (*Weston* v. *City of Syracuse*, 158 N. Y. 274.)

"And they may also assert the same defense in a proceeding such as this. In *State* v. *Ricord* (35 N. J. Law, 396) it was said that the relator must not only show that the defendant is bound in the discharge of his official duty to do the act in question, but that the relator's right to have it done is such as the law ought at the relator's suit to enforce. In *People ex rel. Slavin* v. *Wendell* (71 N. Y. 171) fraud was held to be a defense to an application like the present."

In the *McGuire* case the common council of the city of Syracuse had directed that a contract be entered into for the purchase of certain lands for the sum of $21,000. The resolution or ordinance was vetoed by the mayor, passed over the veto by the common council, and the mayor directed to sign the contract. This he refused to do, alleging that the property was not worth to exceed $12,000, and upon the submission of affidavits on the application for peremptory writ, the court held the respondent could raise the question, and granted an alternative writ that the issues might be determined.

The principle laid down by Judge ANDREWS has been followed in a number of instances. Many authorities justify the raising of such issue in taxpayer's actions, and citation of cases is unnecessary.

The purpose and function of the order of mandamus has been clearly stated by our court of last resort. "The writ will be granted to prevent a failure of justice, but never to promote manifest injustice. It is a remedial process and may be issued to remedy a wrong, not to promote one, to compel the discharge of a duty which ought to be performed, but not to compel the performance of an act which will work a public and private mischief, or to compel a compliance with the strict letter of the law in disregard of its spirit or in aid of a palpable fraud." (*People ex rel. Wood* v. *Assessors*, 137 N. Y. 201, 204.)

Certain general rules applying to the proceedings are well established. Mandamus will not lie to review the determination of public boards or officers in matters involving the exercise of discre-

tion or judgment if they have proceeded within their jurisdiction. (*People ex rel. Peixotto* v. *Bd. of Education*, 212 N. Y. 463.) It will issue to compel the performance of official duty clearly imposed by law where there is no other adequate specific remedy, but the duty must be positive, not discretionary, and the right to its performance must be so clear as not to admit of reasonable doubt or controversy. (*Matter of Burr* v. *Voorhis*, 229 N. Y. 382.) Whatever a taxpayer can accomplish for the protection of the municipality by a suit under the Taxpayers' Act, the officers of the municipal corporation, whose duty it is to protect the corporate property from waste and injury, may bring about by a defense to an action or proceeding to compel acts which will effectuate the waste and injury. (*Weston* v. *City of Syracuse*, 158 N. Y. 274.)

We are, therefore, constrained to hold that while the act which it is sought to compel the respondent to perform is of a purely ministerial character, he is entitled, upon the allegations set forth in his return, to raise the issue of the legality of the acts of the common council in awarding the contracts in question.

The charter of the city of Norwich, section 38, in substance provides that all contracts made in behalf of the city for the purchase of material, supplies or equipment, shall be let to the lowest bidder. It is the contention of the respondent that competitive bidding for the fire equipment to be purchased was deliberately and intentionally prevented by the adoption of specifications which rendered it impossible for any other than the one bidder for the pumpers and the one bidder for the service truck to comply with the specifications and submit a bid.

The provision of the charter or of a general statute relating to competitive bidding being required in the awarding of municipal contracts is not violated by the adoption of specifications requiring a particular type of construction, or the use of certain definitely described materials. Clearly, it was desirable to procure pursuant to the authority and direction of the taxpayers of the city of Norwich, the most effective fire-fighting apparatus. Naturally an experienced chief of the fire department would be desirous of procuring such apparatus, and it is reasonable to assume would be better qualified than an inexperienced individual in preparing specifications for such equipment.

While suspicion is cast upon the manner in which the specifications were prepared; while there is a considerable amount of insinuation and innuendo in the return of the respondent and to be drawn from the testimony in the proceeding and the brief of the learned counsel for the respondent, we are of the opinion a holding that there was deliberate, palpable fraud in connection with the specifica-

tions, the manner of their preparation, or the details set forth in them, would not be justified upon the evidence in the case. It is a reasonable conclusion to be drawn from the testimony that the chief preferred the apparatus which the common council authorized to be purchased.

Were it not for two provisions in the specifications, we would be inclined to hold the specifications and the action of the common council were not illegal. However, two provisions were inserted in the specifications and the requirements applying to bidders which unquestionably could have only one result, and that result was to exclude the possibility of any bidders other than the American-LaFrance & Foamite Industries, Inc., for the pumpers, and the Buffalo Fire Appliance Corporation, for the service truck. One was the provision that all equipment to be furnished must be regularly produced in the factory of the bidder. With specifications that did not allow substitution or other construction, but described the construction of the pumper and the truck of the successful bidder, it was impossible for any manufacturer to purchase and assemble either the pumper or the truck and bid thereon, because no other manufacturer could bid on equipment furnished in accordance with the specifications and comply with the requirement that all of the equipment must be regularly produced in his plant. Another provision in the specifications, not quite so unreasonable, and yet clearly designed to prevent competitive bidding, provided that the successful bidder for the pumpers must maintain a service station or department with all necessary parts carrying a stock of at least $50,000 in value within two hundred miles of the city of Norwich. No manufacturer or distributor could possibly comply with such requirement, other than the American-LaFrance & Foamite Industries, Inc.

The conclusion is, therefore, irresistible that the specifications as adopted not only prevented competitive bidding, but were clearly designed to prevent competitive bidding. Such specifications were manifestly directly contrary to the letter and spirit of the provisions of the charter of the city of Norwich and the general statutes relating to competitive bidding for municipal contracts.

We, therefore, feel constrained to hold that the action of the common council, being in violation of the provisions of the charter of the city of Norwich, the specifications having been designed to, and having clearly prevented competitive bidding, the action of the common council in adopting the same and awarding the contracts thereunder was illegal, and should not be countenanced or sustained by the court.

The application for a mandamus order directing and commanding the respondent, Frank Zuber, to sign the bonds in question is denied and the proceeding dismissed, with fifty dollars costs and disbursements to the respondent, but without in any manner limiting, restricting or preventing the common council of the city of Norwich, upon proper specifications allowing competitive bidding within the letter and spirit of section 38 of the charter of such city, from again advertising for bids for the fire apparatus as authorized to be purchased by the taxpayers of the city of Norwich at the special election held on the 25th day of May, 1934.

Submit findings and judgment accordingly.