Matter of Scanlon v Miller-Williams (2025 NY Slip Op 25211)

[*1]

Matter of Scanlon v Miller-Williams

2025 NY Slip Op 25211

Decided on September 24, 2025

Supreme Court, Erie County

Colaiacovo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on September 24, 2025
Supreme Court, Erie County

In the Matter of the Application of Hon. Christopher P. Scanlon 
 as Mayor of the City of Buffalo, and Hon. Mitchell P. Nowakowski, as Member of the Common Council of the City of Buffalo, Petitioners, 
 For a Judgment Pursuant to New York CPLR Article 78,

against
Barbara Miller-Williams, as Comptroller of the City of Buffalo, Respondent.

815301/2025

CONNORS LLP
Terrence M. Connors, Esq.
Andrew M. Debbins, Esq.
Attorneys for Petitioners WOODS OVIATT GILMAN LLP
William F. Savino, Esq.
Robert J. Marks, Esq.
Attorneys for Respondent

Emilio Colaiacovo, J.

In this Article 78 proceeding, Petitioners seek an Order and Judgment compelling the Respondent to issue and sell bonds pursuant to the capital improvement budget and bond resolutions adopted by the Buffalo Common Council on February 18, 2025. See Petition, p. 18; NYSCEF Doc. 12. In seeking this relief, Petitioners argue that the Comptroller cannot escape performing her ministerial duty once the Common Council and Mayor have acted. Failing to do so, they insist, is in excess of her authority and jurisdiction. Id. Respondent maintains that her duty is to "superintend the fiscal affairs of the city" and that she possesses the discretionary authority to determine whether and when bonds that are authorized by the Common Council are ultimately issued. See Respondent's Memorandum of Law, p 4, quoting Buffalo City Charter §7-4(1); NYSCEF Doc. 22. 
Oral argument was held on September 22, 2025. The matter having been deemed submitted, the Court's decision is as follows.
 STATEMENT OF FACTS
The underlying facts are not in dispute. Petitioner Acting Mayor Christopher Scanlon (hereinafter "Scanlon"), submitted his proposed capital budget on November 1, 2024. The Common Council voted to approve the budget on December 10, 2024 by a vote of 6-1. In doing so, both the Executive and the Legislature authorized the issuance of bonds and notes and thereafter adopted bond resolutions for various projects and spending priorities. See Verified Petition, ¶35; NYSCEF Doc. 12. Pursuant to City Charter §20-27, the Common Council voted to authorize the issuance of bonds for the 2025 capital budget. In that resolution, the City Comptroller was "authorized and directed" to issue bonds to fund those projects listed in the capital budget. Prior to these adoptions, the Respondent issued a letter "implor[ing] all approving parties to seriously reconsider increasing the current debt cap and the financial implications involved." See Barbara Miller-Williams Letter, dated November 14, 2024; NYSCEF Doc. #4. In addition, Comptroller Miller-Williams wrote:
It must be noted that the current proposal of $110 million in borrowing exceeds the established debt cap of $28 million by $82 million for 2025. Since my tenure as Comptroller, no Capital Budget request has ever exceeded the Debt Cap to date. I must emphasize the importance of maintaining this limit given the City's current and future fiscal uncertainties, unspent funds on ongoing projects, and potential arbitrage issues.
Id.
Thereafter began the debate between the Petitioners and Respondent on the propriety and necessity of the borrowing. Petitioners insist that the City Charter contains no ambiguity or discretion, and that the Comptroller has the affirmative duty to borrow once the Capital Budget is passed by the City Council. The Respondent insists that, as part of her duty to superintend the City's finances, she has the discretion to determine whether bonds authorized by the Common Council will be issued. See Affidavit of Gregg S. Szymanski, CPA, ¶4; NYSCEF Doc. #20.[FN1]
Further, she maintains that Scanlon's Capital Budget is part of a reckless plan to "borrow money in a vain attempt to leave a lasting legacy built on capital projects." See Affidavit of Barbara Miller-Williams, ¶12; NYSCEF Doc. #14.
While largely waging this dispute in the public eye, Petitioners filed this action on September 8, 2025 seeking a writ of mandamus. The Respondent answered on September 17, 2025. See Answer in Special Proceeding; NYSCEF Doc. #13. The parties engaged in mediation with Hon. Barbara Howe, J.S.C. (Ret). However, the parties were unable to reach a resolution. It was learned during oral argument that the Respondent went to market on September 18, 2025, to borrow in excess of $28,000,000, which was above her own self-imposed cap.

DECISION
The Legislative cannot transfer the Power of Making Laws to any other hands. For it being but a delegated Power from the People, they who have it, cannot pass it over to others. The People alone can appoint the Form of the Commonwealth, which is by Constituting the Legislative, and appointing in whose hands that shall be.
John Locke
The Works of John Locke, 1714.
The present dispute is truly an examination of the function of government and the authority of the Respondent as it relates to the budgetary process. Despite calls to describe it as a case of first impression or to make it worthy of a complicated analysis, it is neither.

Standing & Statute of Limitations Objections
In her Answer, Respondent suggests that Petitioners lack standing to bring this proceeding. While Respondent argues that Petitioners do not possess a legal right to compel the Comptroller to issue bonds, she nevertheless states that even if they did, the Common Council is the only party that can ask for a writ a mandamus, and not Scanlon or Nowakowski individually. See Answer, ¶81; NYSCEF Doc. 13. This is untrue. Here, Scanlon seeks to ensure that the Comptroller performs her duty, which is to go to market and procure the bonds. Nowakowski is a member of the Common Council and was one of the legislators who voted for the resolution directing and authorizing Miller-Williams to go to market. Nowakowski insists that by her own actions, the Respondent has "usurped the power of the legislator petitioner . . . by prohibiting [him] from performing [his] duties to represent his constituents and to make laws." See Petitioners' Memorandum of Law, p. 14, citing Borello v. Hochul, 221 AD3d 1484 (4th Dept. 2023); NYSCEF Doc. #23. 
The Court of Appeals dispensed with the Respondent's argument not that long ago. In Silver v. Pataki, the Court held "a controlling block of legislators" is not "a prerequisite to plaintiff's standing as a Member . . . plaintiff's injury in the nullification of his personal vote continues to exist whether or not other legislators who have suffered the same injury decide to join in the suit." Silver v. Pataki, 96 NY2d 532 (2001). 
Both Scanlon and Nowakowski have an interest in seeing the Comptroller act in accordance with her Charter responsibilities and to ensure that legislative acts are not interfered with by a separate office that has no role in the process that delivered the budget. Because they have alleged a similar injury, they have standing to bring this action.
In her Answer, Respondent also argues that this action was commenced outside the four-month statute of limitations. Under CPLR article 78, a writ of mandamus to compel governmental bodies or officers "must be commenced within four months . . . after the respondent's refusal, upon the demand of the petitioner or the person whom he represents, to perform its duty." 
Here, the third objection and point of law simply reads "the Petition is barred by the statute of limitations." See Answer, ¶80; NYSCEF Doc. 13. The objection provides little guidance as to how it is barred. Instead, the Court is left alone to determine if it ran. Nevertheless, because of the ongoing nature of the dispute, and the repeated requests and denials made, the statute of limitations argument is without merit.

Mandamus
Can the Court compel the Comptroller to perform the act that was authorized and directed by the Common Council? This is the only substantive matter before the Court.
Petitioners contend that the Comptroller cannot avoid acting on the resolution that authorized and directed her to go to market and issue the appropriate government financing bonds. The Comptroller argues that it is within her charter responsibilities and within her discretion not to do so. Article 7 of the City Charter provides that,
The Comptroller shall superintend the fiscal affairs of the city; keep, audit and state all [*2]accounts in which the city is interested and keep accurate and proper books showing their condition at all times; examine, audit and settle accounts of all officers, departments, boards commissions and other agencies of the city and certify the amount or balance due thereon; examine and audit the accrual and collection of all revenues and receipts; examine all liquidated claims and accounts against the city and all vouchers, and audit the same, if an appropriation is available for the full payment thereof; prescribe such methods of accounting as are necessary for the performance of the foregoing duties; prepare, draw and sign checks drawn on the accounts of the city or its agencies; designate the depositories of all city moneys; approve as to sufficiency all bonds and undertakings of every kind given to the city; receive, preserve and keep on file in the comptroller's office all contracts, undertakings and vouchers; keep an account between the city and the director of the treasury and therein charge the director with the balance in the treasury when the director came into office and with all moneys received by the director and credit the director with checks drawn on and paid by the director which accounts shall be balanced and settled at the end of each fiscal year.
City of Buffalo Charter, §7-4(1). Implied in her charge, the Comptroller maintains that to "superintend" includes oversight responsibilities. Further, she insists that City Common Council Resolutions passed in 1945 and 1994 expressly provide her "the discretion to determine whether and when bonds that are authorized by the Common Council are ultimately issued." See Respondent's Memorandum of Law, p. 1; NYSCEF Doc. #22. She maintains that the Petitioners possess no clear legal right or entitlement to mandamus relief.
Petitioners argue that the resolutions authorizing and directing the bonding "could not have been clearer." Petitioner's Memorandum of Law, p. 1; NYSCEF Doc. #23. The Comptroller has a ministerial duty to issue the bonds which are not subject to interpretation or discretion. By failing to do so, Petitioners insist, the Comptroller abrogated her duties under the City Charter.
The granting of a writ of mandamus rests largely in the discretion of the Court. Frazier-Davis Constr. Co. v. Gerosa, 6 AD2d 112 (1st Dept. 1958). "The burden is thrown on the applicant for the order to demonstrate the necessity and the propriety of its use." Matter of Coombs v. Edwards, 280 NY 361 (1939). "A proceeding pursuant to CPLR article 78 is the proper vehicle by which to compel officials to perform a mandatory duty." Bonanno v. Town Bd. of Babylon, 148 AD2d 532 (2nd Dept. 1989). "Mandamus to compel the performance of an official duty may only be granted where the act sought to be compelled is ministerial in nature and involves no exercise of discretion, and where the applicant has demonstrated a clear legal right thereto." Matter of Margaret Cardy, LLC v. Del Col., 2013 NY Misc. LEXIS 5121 (Supreme Court, Suffolk County, 2013), quoting Savastano v. Prevost, 66 NY2d 47 (1985). "Conduct that requires adherence to a governing rule or standard with compulsory results is considered to be a ministerial act." Matter of Margaret Cardy, LLC v. Del Col. quoting Tango v. Tulevech, 61 NY2d 34 (1983). 
The New York State Comptroller's Office's Opinion 91-8 is instructive. In Opinion 91-8, the secretary-treasurer of a fire district inquired if they would have a conflict of interest if he or she were to purchase bonds to be issued by the district? While the facts are not identical, the reasoning behind the Comptroller's opinion is important. The State Comptroller opined that "the execution of a bond has been characterized as a 'purely ministerial' function, which may be enforced by mandamus where there is no doubt as to the regularity of the proceedings leading up [*3]to the execution of the bond." NY State Comptroller Opinion 91-8, citing Finigan v. Zuber, 156 Misc. 479 (Supreme Court, Chenango County, 1934). 
Here, there is no doubt that the resolutions were regular and legal. No one has suggested otherwise. Instead, the Comptroller simply refuses to borrow, citing her self-imposed budget cap. This does not override her statutory duty to act on the regular and legally issued resolutions which authorized and directed her to issue the bonds. This is a clear legal directive which she must abide.
In Cohalan v. Caputo, the Second Department addressed a similar dispute. In Cohalan, an Article 78 was brought to compel the Comptroller of Suffolk County to process certain requisitions to purchase police vehicles that had been lawfully appropriated. The Second Department held that "Comptroller of the County of Suffolk [did] not have the power to refuse to encumber money which [had] been appropriated by the county legislature and approved to be expended by the county executive merely because he believe[d] that the items for which he was directed to encumber money are unnecessary." 94 AD2d 742 (2nd Dept. 1983). Here, like in Cohalan, the City of Buffalo sets forth in its charter the budgetary process. In fact, it is outlined in §20 of the charter. While the Comptroller initially responds to the Mayor's proposed budget, once submitted to the Common Council, the Comptroller's only role is to abide by the authorization and direction of the council to borrow. The Comptroller has no policy making or supervisory role regarding the manner in which money is to be approved and appropriated. Once the money has been approved, and absent irregularity or illegality, the Comptroller "has no alternative but to encumber the funds and forward the acquisition to the proper vendor." Id. at 743. 
Since the Comptroller has not raised any illegality or irregularity, other than failing to comply with her self-imposed budgetary cap which is a non-binding mechanism, the process is presumptively correct, and the Comptroller must act pursuant to the Resolution's authorization and directive. Because the Comptroller's duty is ministerial, she has no discretion and she must bond as required. As such, the mandamus the Petitioner's seek is an appropriate remedy to compel the performance of a statutory duty that is ministerial in nature. See Id. citing Matter of Peirez v. Caso, 72 AD2d 797 (2nd Dept. 1979). 
No matter how well-intended the Comptroller is, absent any controlling legal authority empowering her to intervene in the budgetary process, her failure to act in this ministerial duty requires this judgment to compel her to act. While she cites to council resolutions from 1945 and 1994, they do not provide her the discretion she claims she possesses. No resolution exists that conveys a veto power to check that which the Executive and Legislature properly completed. To claim otherwise is unsupported by law and fact.
Earlier, this Court quoted John Locke. As one of the foremost political philosophers who served as an inspiration to this country's founding fathers, his quote is informative. The process of governing is reserved to the legislature and the executive. It is a non-delegable prerogative that cannot be usurped. Regardless of her intentions, by inserting herself into this process, the Comptroller exceeded her mandate and failed to abide by her ministerial role as provided in the charter. The duly elected officials who are authorized in the City Charter with the responsibility for the budgetary process exercised their judgment and reached a decision they believed to be the best for the City of Buffalo. While the Comptroller has disagreed and made her views known, she does not possess a veto power. Instead, she has a ministerial duty to execute what the two branches of city government adopted. Her failure to do so necessitated this writ, which [*4]Petitioners are entitled to. To permit otherwise would inflict a significant harm on the legislative process which has governed our national, state, and local politics.
The management of the public's business is left to those who have sought and gained the confidence of their constituents. Barbara Miller-Williams, herself an elected official, has gained a similar degree of confidence from city residents. However, the powers of her office do not include a role in the budgetary process other than the ministerial responsibilities as provided for in the charter. Her failure to act pursuant to the Council's resolution was a dereliction of her duty. A writ of mandamus is necessary to compel her to perform the duty that was previously authorized.
As such, the Petition is hereby GRANTED in its entirety. Petitioner shall submit an Order and Judgment consistent with this Memorandum Decision.
Hon. Emilio Colaiacovo, J.S.C.
September 24, 2025
Buffalo, New York

Footnotes

Footnote 1: Gregg. S. Szymanski, CPA, is the Investment and Debt Manager for the City of Buffalo.